ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

09 CRIM 682

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

       - v. -          :

ROSS H. MANDELL,          :
STEPHEN SHEA,
ADAM HARRINGTON,          :
    a/k/a "Adam Rukdeschel,"
ARN WILSON,          :
ROBERT GRABOWSKI, and
MICHAEL PASSARO,          :

       Defendants.          :

- - - - - - - - - - - - - - - - x

**INDICTMENT**

09 Cr.

## COUNT ONE

### (Conspiracy To Commit Securities Fraud, Mail Fraud, and Wire Fraud)

The Grand Jury charges:

### RELEVANT PERSONS AND ENTITIES

1.  Sky Capital Holdings Ltd. ("Sky Capital Holdings" or "SKH") was a corporation that purported to provide financial and investment advisory services to corporate clients and private individuals, primarily in the United States and the United Kingdom. Sky Capital Holdings was founded in or about January 2001 and incorporated under Delaware law on or about December 28, 2001. Between in or about July 2002 and in or about late 2006, SKH's stock was publicly traded on the Alternative Investment Market ("AIM") of the London Stock Exchange ("LSE"). As set forth more fully below, Sky Capital Holdings had several related

and subsidiary companies that purported to provide various related services.

2.   Sky Capital LLC was a limited liability company organized under New York law, and a wholly-owned subsidiary of Sky Capital Holdings.  On or about May 13, 2002, Sky Capital LLC obtained broker/dealer approval from the National Association of Securities Dealers Inc. ("NASD").  In or about 2004, Sky Capital LLC opened branch offices in Boca Raton, Florida and Red Bank, New Jersey.  Sky Capital LLC purported to provide retail brokerage services, research, equity and fixed income trading.

3.   Sky Capital UK Limited ("Sky Capital UK") was a wholly-owned subsidiary of Sky Capital Holdings.  Sky Capital UK was a securities broker-dealer with its principal place of business in London, England.  Sky Capital UK purported to provide private client brokerage services, institutional sales and trading, and research activities.

4.   Sky Capital Enterprises Inc. ("Sky Capital Enterprises" or "SKE") was a venture capital firm that purported to provide strategic advice, consulting services and financing to small and mid-size start-up and early stage companies.  Sky Capital Enterprises was incorporated under Delaware law on or about August 1, 2002 under the name "Sky Venture Capital Inc." Between in or about March 2004 and in or about late 2006, SKE's stock was publicly traded on the AIM.

5.    Sky Capital Holdings, Sky Capital LLC, Sky Capital UK, and Sky Capital Enterprises were affiliated companies, and all but Sky Capital UK had a primary place of business at 110 Wall Street, New York, New York.  (Sky Capital Holdings, Sky Capital LLC, Sky Capital UK and Sky Capital Enterprises are, unless otherwise specified, collectively referred to in this Indictment as the "Sky Capital Affiliated Companies" or "Sky Capital").

6.    The Thornwater Company, L.P. ("Thornwater") was a firm formed under New York State law on or about March 3, 1994. Thornwater was a licensed broker-dealer and a member of the NASD. Thornwater's principal place of business was 99 Wall Street, New York, New York.  Thornwater ceased operations in or about February 2003.

7.    ROSS H. MANDELL, the defendant, controlled the Sky Capital Affiliated Companies.  MANDELL founded Sky Capital and served as Chief Executive Officer of both Sky Capital Holdings and Sky Capital Enterprises.  MANDELL also served as a member of the Board of Directors of the various Sky Capital Affiliated Companies.  Due to MANDELL's disciplinary history in the securities industry, Sky Capital had agreed as a condition of its NASD membership that MANDELL would not supervise anyone or hold a supervisory position.  Nevertheless, at all times relevant to this Indictment, MANDELL exercised day-to-day management control

over the Sky Capital companies and their employees either directly or through others.

8.     Prior to founding Sky Capital, ROSS H. MANDELL, the defendant, worked at Thornwater, joining the firm in 1997 as a Senior Vice President.  MANDELL gained ownership control of Thornwater in or about 1999 and continued to work at Thornwater until he purportedly left in early 2001.  While at Thornwater, MANDELL held himself out as merely a broker and investment banker.  In fact, however, MANDELL was an undisclosed principal of Thornwater who exercised day-to-day management control over Thornwater and its employees either directly or indirectly through others from at least in or about 1999 until Thornwater ceased operations.

9.     GlobalSecure Holdings Ltd. ("GlobalSecure") was a privately owned company that was incorporated under Delaware law with its principal place of business in Silver Spring, Maryland. GlobalSecure was founded in March 2003 under the name "GlobalSecure, Ltd," to provide products and services related to the homeland security industry primarily in the United States. Since in or about July 2005, GlobalSecure has been known as Global Secure Corp.  GlobalSecure is an affiliate of Sky Capital Enterprises, which, along with MANDELL, holds a controlling interest in GlobalSecure.  MANDELL was one of GlobalSecure's founders and has served on GlobalSecure's Board of Directors.

10.   Advanced Spinal Technologies, Inc. ("AST") was a privately owned company that was incorporated under Delaware law with its principal place of business in Boca Raton, Florida.  AST was founded in or about December 2004 to exploit and develop technology related to the treatment of back conditions.  AST is an affiliate of Sky Capital Enterprises, which along with MANDELL, holds a controlling interest in AST.  MANDELL was one of AST's founders and has served on AST's Board of Directors.

11.   STEPHEN SHEA, the defendant, joined Thornwater in or about April 1997.  From in or about April 1999 until in or about July 2002, SHEA served as Thornwater's Operations Principal.  In or about July 2002, SHEA left Thornwater to work at Sky Capital.  SHEA served as President and Chief Operating Officer ("COO") of Sky Capital Holdings, as COO of Sky Capital LLC, and as a member of Sky Capital Enterprises' Board of Directors.  As COO, SHEA oversaw all aspects of Sky Capital's business operations, including customer accounts, securities broker-dealer activities, and securities trading at Sky Capital LLC.

12.   ADAM HARRINGTON, a/k/a "Adam Rukdeschel," the defendant, was a registered broker at Thornwater from in or about January 2000 until in or about August 2002.  From in or about August 2002 until in or about September 2005, HARRINGTON worked at Sky Capital as a registered broker.  HARRINGTON was one of the

more senior brokers at Sky Capital LLC and an active participant in soliciting customers to purchase Sky Capital securities and directing other brokers to do the same.

13.   ARN WILSON, the defendant, was a registered broker at Thornwater from in or about July 1998 until in or about November 2002, when WILSON left Thornwater to work as a registered broker at Sky Capital.  WILSON was a senior broker at Sky Capital LLC and an active participant in soliciting customers to purchase Sky Capital securities.

14.   ROBERT GRABOWSKI, the defendant, joined Thornwater in or about April 1997 as a registered broker and General Securities Principal.  In or about June 1998, GRABOWSKI was named Executive Vice President of Thornwater.  From in or about July 2001 until Thornwater ceased operations, GRABOWSKI was listed as President and CEO of Thornwater, even though MANDELL in fact controlled Thornwater.  In or about June 2003, GRABOWSKI joined Sky Capital as a registered broker.  GRABOWSKI and ARN WILSON, the defendant, were partners at Sky Capital LLC and improperly shared the same registered representative number.

15.   MICHAEL PASSARO, the defendant, was a registered broker at Thornwater from in or about November 2000 until in or about May 2002.  While at Thornwater, PASSARO also held the position of Vice President of Sales.  In May 2002, PASSARO joined Sky Capital as a registered broker.  After joining Sky Capital,

PASSARO worked in both the New York and Boca Raton offices of Sky Capital LLC.  PASSARO was an active participant in soliciting customers to purchase Sky Capital securities, and acted as a supervisory broker.

## THE SCHEME TO DEFRAUD

16.  From at least in or about 1998 through in or about 2006, ROSS H. MANDELL, STEPHEN SHEA, ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON, ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants, and others known and unknown, participated in a scheme to defraud investors through the operations of Thornwater and Sky Capital.  The defendants and others carried out this scheme by soliciting millions of dollars of funds under false pretenses, manipulating the market for SKH and SKE securities, failing to use investors' funds as promised, and misappropriating and converting investors' funds without the knowledge or authorization of the investors.  In furtherance of the scheme, the defendants and others employed high-pressure sales tactics and used material misrepresentations and omissions to convince victims to invest millions of dollars first through Thornwater and then through Sky Capital.

17.  In particular, ROSS H. MANDELL, STEPHEN SHEA, ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON, ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants, and others known and unknown, used material misrepresentations and omissions to

7

convince victims to invest in a series of purported investment opportunities, including (a) private placement offerings, (b) offers to purchase restricted stock, and (c) Sky Capital securities, promising, among other things, large investment returns.  As part of the scheme, the defendants and others told investors that their funds would be used for legitimate business purposes, including, but not limited to, acquiring business assets and bringing various companies public on a significant securities exchange.  Contrary to what victims were told, however, investors' funds were used substantially for, among other things, enriching the defendants and others; paying excessive, undisclosed commissions to brokers, notwithstanding the brokers' fiduciary obligation to disclose such commissions; and paying off victims who had incurred losses through prior purported investment opportunities.

18.   In furtherance of the scheme, the defendants and others also used deceptive and fraudulent means to manipulate the secondary market for SKH and SKE stock.  This was done to (a) placate existing investors so that the scheme could continue; (b) induce customers to make further investments; and (c) enrich members of the scheme who had substantial holdings in Sky Capital.

19.   In connection with the scheme, the defendants and others, acting primarily from Thornwater and Sky Capital's

8

offices in New York, New York, raised a total of approximately $140 million from investors.

## Thornwater Private Placements

20.   Between in or about 1998 and in or about 2002, members of the scheme, including ROSS H. MANDELL, STEPHEN SHEA, ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON, ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants, promoted and directed others to promote a series of private placements in various entities that MANDELL controlled.  These offerings included private placements to purchase "Units," "shares," or "Interests" of securities in companies named Raleigh Holdings LLC ("Raleigh"), Lanesborough Holdings LLC ("Lanesborough"), TicketPlanet.com, Inc. ("TicketPlanet"), St. James Holdings, LLC ("St. James"), Chipcards, Inc. ("Chipcards"), and Dorchester Holdings Ltd. ("Dorchester") (collectively the "Thornwater Private Placements").  According to written and oral representations made by the defendants and others to investors, Raleigh, Lanesborough, St. James and Dorchester were holding companies that purportedly were created to, among other things, make loans to Thornwater, acquire equity interests in broker-dealers and other financial and investment banking businesses, including Thornwater, and sell securities to the public in a public offering and/or finance an initial public offering ("IPO") of an affiliated company.  GRABOWSKI was listed as President of

9

Raleigh, Lanesborough and St. James, and as the sole officer and director of Dorchester.  TicketPlanet and Chipcards were corporations that purportedly were going to sell securities to the public in a public offering.  In connection with the Thornwater Private Placements, the defendants and others acting at the defendants' direction and/or with the defendants' knowledge, promised investors substantial returns on their investments.

21.  Despite the representations to investors, none of the Thornwater Private Placements ever resulted in a sale of securities to the public in a public offering, and individuals who invested in those private placements did not receive the returns that they had been promised.  Instead, investors' money was used to enrich the defendants and to fund Thornwater's day-to-day operations.  As select investors complained about their losses, some received shares in subsequent private placements (which also proved to be worthless) or other forms of compensation, which had been generated by the defendants and others acting at the defendants' direction from other subsequent investors.  To convince investors to accept shares in the subsequent private placements as compensation for their losses, ROSS H. MANDELL and ROBERT GRABOWSKI, the defendants, and others known and unknown, used high pressure tactics.

## Use of Thornwater to Solicit Investors for Sky Capital

22.   In or about 2001, ROSS H. MANDELL, the defendant, founded Sky Capital after purportedly leaving Thornwater. Although MANDELL was no longer employed by Thornwater, he continued to serve as a "consultant" to Thornwater and to act as an undisclosed principal.  MANDELL also received payments from Thornwater, often in the form of cash or check delivered by ARN WILSON and ROBERT GRABOWSKI, the defendants, purportedly for "selling" customer accounts, but in fact as a means to misappropriate investor funds.

23.   Following Sky Capital's founding, ROSS H. MANDELL, STEPHEN SHEA, ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON, ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants, and others known and unknown, used Thornwater as a means to raise capital for Sky Capital, including through a private placement offering for Sky Capital Holdings and a subsequent solicitation in connection with Sky Capital Holdings' IPO on the AIM.  In connection with the IPO, Sky Capital distributed a booklet entitled "Offer for Subscription and Admission to the Alternative Investment Market."  That booklet falsely stated that MANDELL would "not be engaged in the management of Sky Capital's securities business or the training, supervision [sic] of persons associated with Sky Capital and he will not . . . engage in activities that would require registration as a principal [of Sky

Capital]."  At that time and in the future, MANDELL was in fact engaged in such activities.

24.  At or about the time that Thornwater brokers were soliciting investors for Sky Capital, they also were soliciting investors for Dorchester Holdings, as described above.  In connection with that solicitation, brokers acting at the direction of ROSS H. MANDELL, the defendant, told investors, among other things, that they would receive an ownership interest in Thornwater and that their Dorchester shares would be exchanged on a "one-to-one" basis for SKH stock, which was expected to be issued at a higher value.  Contrary to what investors were told, however, investors in Dorchester Holdings did not receive SKH stock on a "one-to-one" basis.  In addition, in oral and written representations, including a private placement memorandum ("PPM") distributed in connection with the Dorchester Holdings private placement, investors were told that Dorchester Holdings funds would be used for legitimate business purposes and to make "subordinated loans" to Sky Capital.  Instead, investors' funds were diverted to Sky Capital as direct payments (rather than loans) and misappropriated to enrich the defendants and others.

25.  Among other things, such funds were used to pay Thornwater brokers, including ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON, ROBERT GRABOWSKI and MICHAEL PASSARO, the defendants, and others known and unknown, material

12

undisclosed commissions in connection with the Sky Capital
Holdings IPO.  To conceal these payments, checks drawn on a
Dorchester bank account, which were signed by ROBERT GRABOWSKI,
the defendant, were falsely identified as "loans."  To further
conceal the payments, brokers who received these payments
subsequently were instructed to sign "promissory notes"
purporting to require them to repay Dorchester for these
payments.  In fact, the brokers were told that no "loans" would
ever have to be repaid, and they in fact did not repay these
"loans."  In connection with the scheme, in or about July 2002,
shares of SKH stock began to trade on the AIM.

          26.  Following the SKH IPO, ROSS H. MANDELL, STEPHEN
SHEA, ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON,
ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants, and others
known and unknown, also participated in a private placement for
Sky Capital Enterprises (then known as "Sky Venture Capital
Inc.").  In or about March 2004, shares of SKE stock began to
trade on the AIM.

### Additional Solicitations at Sky Capital

          27.  Beginning in or about late 2002 and continuing
until in or about late 2006, ROSS H. MANDELL, STEPHEN SHEA, ADAM
HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON, ROBERT
GRABOWSKI, and MICHAEL PASSARO, the defendants, and others acting
with the defendants' knowledge and at their direction conducted a

series of private placements related to Sky Capital Holdings, which resulted in the issuance of additional SKH shares.  During this same time period, the defendants and others also conducted a private placement related to GlobalSecure, and solicited investors to buy "units" of newly issued SKE stock that would trade on the AIM.

        28.  To induce purchasers to participate in these private placements and solicitations, ROSS H. MANDELL, STEPHEN SHEA, ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON, ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants, and others acting with the defendants' knowledge and at their direction, made material misrepresentations and omissions regarding, among other things, how investor funds would be used, what profits investors would make from their investments, how investor funds had been used in the past, and the value of the securities that investors were purchasing.  They also used assets held by Sky Capital, including GlobalSecure and AST, to lure customers to invest in these private placements.

        29.  For example, ROSS H. MANDELL, STEPHEN SHEA, ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON, ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants, and others acting with the defendants' knowledge and at their direction, told investors that they were receiving an opportunity to purchase shares of SKH and SKE stock that had been "discounted" from the

list price of those stocks on the AIM.  In fact, as explained in
more detail below, the price of this stock appeared to be
"discounted" only because the defendants and others at Sky
Capital had artificially inflated and maintained the list price
of SKH and SKE through fraudulent means.

30.  Moreover, ROSS H. MANDELL, STEPHEN SHEA, ADAM
HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON, ROBERT
GRABOWSKI, and MICHAEL PASSARO, the defendants, and others acting
with the defendants' knowledge and at their direction, told
investors that the value of the SKH and SKE stock – and the
investors' investments – would increase dramatically in the near
future due to various "liquidity" events, such as an IPO or an
acquisition by another entity.  Investors were promised that such
"liquidity" events were imminent, when in fact they were not.

31.  As part of the scheme, ROSS H. MANDELL, STEPHEN
SHEA, ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON,
ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants, and others
acting with the defendants' knowledge and/or at their direction,
used Sky Capital's brokerage business as a means to attract
investors.  Among other things, they used cold-callers and
brokers to initiate contact with potential investors who were
typically approached in the first instance about investing in a
non-Sky Capital stock that was trading on an American stock
exchange, such as the New York Stock Exchange ("NYSE") or the

15

National Association of Securities Dealers Automated Quotations
System ("NASDAQ").   After a period of trading in these stocks,
investors were then solicited to invest in a Sky Capital product,
such as the publicly traded SKH and/or SKE stock, or in a private
placement related to SKH, SKE or GlobalSecure.   Investors were
often encouraged by the defendants and others to sell their non-
Sky Capital stock, even when that stock had been increasing in
value.

### Manipulation of SKH and SKE Stock

32.   In furtherance of the scheme, ROSS H. MANDELL,
STEPHEN SHEA, ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN
WILSON, ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants,
and others manipulated the market for SKH and SKE stock and
artificially inflated the share price of those stocks.   They did
so by enforcing firm-wide policies and practices designed to
create the appearance of demand for SKE and SKH stock and to
discourage investors from selling SKE and SKH stock.   Such
practices by the defendants and others included, among other
things: (a) using high-pressure sales tactics and materially
false statements and omissions to induce investors to buy SKH
and/or SKE stock; (b) using high-pressure sales tactics and
materially false statements and omissions to discourage investors
from selling SKH and/or SKE stock; (c) failing to execute
customer orders to sell SKH and/or SKE stock; (d) enforcing a "no

16

net sales" policy whereby brokers were instructed not to accept orders from Sky Capital customers to sell SKH or SKE stock unless a matching buy order could be generated on behalf of another Sky Capital customer in order to ensure that more SKH and SKE stock was purchased by Sky Capital's retail customers than sold; (e) improperly "crossing" SKH and/or SKE stock between and among Sky Capital customer accounts for the purpose of supporting and maintaining the market price of SKH and SKE; (f) "parking" stock in customer accounts, meaning placing SKH and/or SKE stock in an investor's brokerage account, often without the investor's consent, for the purpose of preventing a sale order from impacting the share price of the stock; (g) making unauthorized purchases of SKH and/or SKE stock on behalf of retail customers; (h) manipulating the order and timing of the execution of trades in SKH and/or SKE stock; (i) encouraging customers to liquidate portions of their brokerage accounts that were not invested in Sky Capital stocks so that the funds could be used to purchase more SKH and/or SKE stock; and (j) using Sky Capital's proprietary or "error" accounts as a means of preventing a sale order from impacting the share price of SKH and/or SKE stock in cases in which a buyer for the stock could not be found.  The purpose of these practices was to give the appearance that there was demand for the SKH and SKE stock (when in fact there was

17

not), to control the market for trades in SKH and SKE stock, and to thereby maintain and increase the share price of those stocks.

### Bribes to Brokers

33.   To facilitate the manipulation of the market for SKH and SKE stock, ROSS H. MANDELL, STEPHEN SHEA, and ADAM HARRINGTON, a/k/a "Adam Rukdeschel," the defendants, and others offered excessive, undisclosed payments to Sky Capital brokers, including ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON, ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants.  These payments were not disclosed to Sky Capital's customers, notwithstanding the fiduciary obligation owed by the brokers to these customers due to, among other things, the relationship of trust and confidence that existed between the brokers and the customers, and the de facto control and dominance that the brokers exercised over the customers' trading accounts.  The brokers also affirmatively misrepresented the compensation they were receiving for trading SKH and SKE stock in oral statements and in written documents, including trade tickets and brokerage statements.  To further conceal the undisclosed payments, individuals at Sky Capital, including individuals acting at the direction of and with the knowledge of MANDELL, SHEA, and HARRINGTON, disguised the payments as "advances," "loans," or "special bonuses."

34.   To generate funds for these payments and other undisclosed commissions, participants in the scheme, acting at the direction of ROSS H. MANDELL, the defendant, created a "spread" on SKH and SKE stock by negotiating to purchase large blocks of Sky Capital stock from Sky investors at discounted prices.   The defendants and others acting at their direction and with their knowledge then solicited other Sky customers to purchase the same Sky Capital stock at the higher price, thereby creating a profit, which was split between Sky Capital and the brokers.

## Misappropriation of Investor Funds

35.   As explained above, Thornwater and Sky investors were told that their investments would be used for legitimate business purposes and that Thornwater and Sky Capital would use investor funds to provide a return on their investments.   In fact, substantial portions of these funds were used to enrich ROSS H. MANDELL, STEPHEN SHEA, ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON, ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants, and others.   Investor funds also were used to pay excessive, undisclosed payments to brokers to induce them to raise funds for Sky Capital and/or to buy SKH and SKE stock, and to provide brokers with additional undisclosed perks.   In addition, investor funds and securities in SKE and SKH were used

to pay off prior victims who had lost money investing through Thornwater and/or Sky Capital.

36.   In some instances, to conceal the nature of payments, individuals who received cash or securities from Sky Capital, including prior victims and individuals who had provided ROSS H. MANDELL, the defendant, and others with personal services, were falsely described as "consultants" by Sky Capital, even though they did not, in fact, provide Sky Capital with consulting services.   These individuals were asked to execute "consulting agreements" and were falsely described as "consultants" in various promotional materials distributed by Sky Capital to investors, including Sky Capital PPM's, even though they did not, in fact, provide Sky Capital with consulting services.

## STATUTORY ALLEGATIONS

### The Conspiracy

37.   From at least in or about 1998 through in or about 2006, in the Southern District of New York and elsewhere, ROSS H. MANDELL, STEPHEN SHEA, ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON, ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with others to commit offenses against the United States, namely, (1) to commit fraud in connection with the

purchase and sale of securities, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; (2) to commit mail fraud, in violation of Title 18, United States Code, Section 1341; and (3) to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

## Objects of the Conspiracy

### Securities Fraud

38.    It was a part and an object of the conspiracy that ROSS H. MANDELL, STEPHEN SHEA, ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON, ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, would and did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making and causing to be made untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of

business which operated and would operate as a fraud and deceit upon the purchasers and sellers of Sky Capital and other securities, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

### Mail Fraud

39.   It was further a part and an object of the conspiracy that ROSS H. MANDELL, STEPHEN SHEA, ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON, ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants, and others known and unknown, unlawfully, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place in post offices and authorized depositories for mail matter, matters and things to be sent and delivered by the Postal Service, and would and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and would and did take and receive therefrom such matters and things, and would and did knowingly cause to be delivered, by mail and such carriers according to the directions thereon, and at the places at which they were directed to be delivered by the persons to whom they

were addressed, such matters and things, in violation of Title 18, United States Code, Section 1341.

## Wire Fraud

40. It was further a part and an object of the conspiracy that ROSS H. MANDELL, STEPHEN SHEA, ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON, ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## Means and Methods of the Conspiracy

41. Among the means and methods by which ROSS H. MANDELL, STEPHEN SHEA, ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON, ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants, and their co-conspirators would and did carry out the conspiracy were the following:

a. Members of the conspiracy employed high-pressure sales tactics and used material misrepresentations and

omissions to convince victims to invest millions of dollars first through Thornwater and then through Sky Capital.

        b.    Members of the conspiracy solicited retail customers to invest in private placements in various holding companies that MANDELL controlled.

        c.    Members of the conspiracy made materially false statements and omissions regarding how investors' funds would be used.

        d.    Members of the conspiracy engaged in conduct to manipulate the market for SKH and SKE stock and to artificially inflate the share price of those stocks.

        e.    To encourage brokers at Sky Capital to "support" SKH and SKE stock, MANDELL, SHEA, and HARRINGTON, and others acting at their direction, offered brokers, including WILSON, GRABOWSKI, PASSARO, HARRINGTON and others, excessive, undisclosed commissions, which were often disguised as "advances," "loans," or "special bonuses."

        f.    To generate funds to pay brokers for buying Sky Capital stock and to obtain additional money for Sky Capital, participants in the scheme created a "spread" on SKH and SKE stock by negotiating to purchase large blocks of Sky Capital stock from Sky investors at discounted prices. Members of the conspiracy then solicited other Sky customers to purchase the

same Sky Capital stock at the higher price, thereby creating a profit, which was split between Sky Capital and the brokers.

## Overt Acts

42.  In furtherance of the conspiracy and to effect its unlawful objects, ROSS H. MANDELL, STEPHEN SHEA, ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON, ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants, and their co-conspirators, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.  On or about February 9, 1998, members of the conspiracy caused to be distributed materials related to Raleigh for the purpose of soliciting investors.

b.  On or about September 25, 1998, members of the conspiracy caused to be distributed a PPM related to Lanesborough for the purpose of soliciting investors.

c.  On or about October 1, 1999, members of the conspiracy caused to be distributed a PPM related to TicketPlanet for the purpose of soliciting investors.

d.  On or about June 27, 2000, members of the conspiracy caused to be distributed a PPM related to St. James for the purpose of soliciting investors.

e.  On or about August 17, 2001, members of the conspiracy caused to be distributed a PPM related to SKH for the purpose of soliciting investors.

f.   On or about February 15, 2002, members of the conspiracy caused to be distributed a PPM related to Dorchester for the purpose of soliciting investors.

g.   On or about June 3, 2002, members of the conspiracy caused to be distributed marketing materials related to SKH's IPO for the purpose of soliciting investors.

h.   In or about June 2002, PASSARO deposited a check dated June 25, 2002, in the amount of $1,500 that was signed by GRABOWSKI and drawn from a Dorchester bank account.

i.   In or about July 2002, HARRINGTON deposited a check dated July 11, 2002, in the amount of $15,000 that was signed by GRABOWSKI and drawn from a Dorchester bank account.

j.   In or about July 2002, WILSON deposited a check dated July 17, 2002, in the amount of $20,000 that was signed by GRABOWSKI and drawn from a Dorchester bank account.

k.   In or about July 2002, HARRINGTON deposited a check dated July 19, 2002, in the amount of $66,600 that was signed by GRABOWSKI and drawn from a Dorchester bank account.

l.   In or about July 2002, WILSON deposited a check dated July 22, 2002, in the amount of $10,000 that was signed by GRABOWSKI and drawn from a Dorchester bank account.

m.   On or about September 2002, members of the conspiracy caused to be distributed a PPM related to an offer to purchase shares in SKE.

n.   On or about April 1, 2003, MANDELL countersigned a "Consulting Agreement" that purported to retain an individual who had lost money through MANDELL as a consultant on behalf of Sky Capital.

o.   On or about April 1, 2003, MANDELL countersigned a "Consulting Agreement" that purported to retain an individual who had sold MANDELL watches as a consultant on behalf of Sky Capital.

p.   On or about April 24, 2003, MANDELL caused Sky Capital to issue a check in the amount of $50,000 to an individual who had sold MANDELL watches.

q.   On or about April 30, 2003, MANDELL countersigned a "Consulting Agreement" that purported to retain a an investor who had lost money in a prior investment as a consultant on behalf of Sky Capital.

r.   On or about May 2, 2003, MANDELL caused Sky Capital to issue a check in the amount of $33,233.18 to a company that had provided MANDELL and his family with personal travel services, including a private jet.

s.   On or about May 20, 2003, MANDELL caused Sky Capital to issue a check in the amount of $2,728.97 to a company that had installed a home theater system in MANDELL'S home.

t.   In or about June 2003, members of the conspiracy caused to be distributed a PPM related to a private

placement in GlobalSecure.

u.   In or about September 2003, members of the conspiracy caused to be distributed a PPM related to an offering to purchase SKH shares.

v.   On or about January 1, 2004, MANDELL countersigned a "Consulting Agreement" that purported to retain an investor who had lost money in St. James as a consultant on behalf of Sky Capital.

w.   On or about January 1, 2004, MANDELL countersigned a "Consulting Agreement" that purported to retain an investor who had lost money in Dorchester as a consultant on behalf of Sky Capital.

x.   On or about January 1, 2004, MANDELL countersigned a "Consulting Agreement" that purported to retain an investor who had lost money in Raleigh as a consultant on behalf of Sky Capital.

y.   On or about April 15, 2004, PASSARO caused to be executed a sell order of 2,400 shares of SKH on behalf of one customer and then crossed out that order with a buy order of 2,400 shares of SKH on behalf of another customer.

z.   On or about September 9, 2004, MANDELL caused Sky Capital to issue a check in the amount of $20,521.15 to a company that had provided MANDELL and his family with personal travel services, including a private jet.

28

aa.   On or about November 18, 2004, PASSARO caused to be executed a sell order of 10,000 shares of SKE on behalf of one customer and then crossed out that order with buy orders on behalf of four other customers totaling 10,000 shares of SKE.

ab.   In or about January 2005, PASSARO deposited a check from Sky Capital LLC in the amount of $6,547.68, which PASSARO had received on or about January 6, 2005, as payment for finding buyers for Sky Capital stock.

ac.   In or about January 2005, HARRINGTON deposited a check from Sky Capital LLC in the amount of $1,211.86, which HARRINGTON had received on or about January 6, 2005, as payment for finding buyers for Sky Capital stock.

ad.   In or about January 2005, GRABOWSKI deposited a check from Sky Capital LLC in the amount of $8,229.81, which GRABOWSKI had received on or about January 6, 2005, as payment for finding buyers for Sky Capital stock.

ae.   In or about January 2005, WILSON deposited a check from Sky Capital LLC in the amount of $8,229.81, which WILSON had received on or about January 6, 2005, as payment for finding buyers for Sky Capital stock.

af.   On or about May 11, 2005, SHEA reviewed and authorized the payment of "special bonuses" to Sky Capital brokers as payments for finding buyers for Sky Capital stock.

ag.   In or about May 2005, HARRINGTON deposited a

check from Sky Capital LLC in the amount of $1,767.38, which
HARRINGTON had received on or about May 11, 2005, as payment for
finding buyers for Sky Capital stock.

ah.  In or about May 2005, GRABOWSKI deposited a
check from Sky Capital LLC in the amount of $3,063.45, which
GRABOWSKI had received on or about May 11, 2005, as payment for
finding buyers for Sky Capital stock.

ai.  In or about May 2005, WILSON deposited a
check from Sky Capital LLC in the amount of $2,000, which WILSON
had received on or about May 11, 2005, as payment for finding
buyers for Sky Capital stock.

aj.  On or about June 8, 2006, SHEA authorized a
"bonus check" from Sky Capital LLC to a broker in the amount of
$2,500 as payment for the broker finding buyers for Sky Capital
stock.

ak.  On or about November 3, 2005, WILSON,
GRABOWSKI, and a co-conspirator not named as a defendant herein,
engineered a series of trades to swap investors' stock holdings
in SKE and SKH solely for the purpose of generating commissions
and manipulating the market for SKE and SKH stock.

al.  On or about March 10, 2006, members of the
conspiracy, including WILSON and GRABOWSKI, solicited customers
to purchase shares of SKE in the secondary market to cross out
sales of SKE by a disgruntled investor, after MANDELL and SHEA

had offered brokers an undisclosed commission.

am.  On or about September 26, 2006, PASSARO spoke to an investor and made material misrepresentations and omissions concerning, among other things, Sky Capital's practices regarding trading in Sky Capital stock.

(Title 18, United States Code, Section 371)

## COUNT TWO

### (Securities Fraud)

The Grand Jury further charges:

43.  The allegations contained in paragraphs 1 through 38 and 41 through 42 of this Indictment are repeated and realleged as if fully set forth herein.

44.  From in or about 1998 through in or about 2006, in the Southern District of New York and elsewhere, ROSS H. MANDELL, STEPHEN SHEA, ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON, ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants, unlawfully, willfully, and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, as set forth above, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud, (b) making untrue

31

statements of material facts and omitting to state material facts

necessary in order to make the statements made, in the light of

the circumstances under which they were made, not misleading, and

(c) engaging in acts, practices, and courses of business which

operated and would operate as a fraud and deceit upon purchasers

and sellers of Sky Capital and other securities.

(Title 15, United States Code, Sections 78j(b) and 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5;
Title 18 United States Code, Section 2.)

## FORFEITURE ALLEGATIONS

45.  As a result of committing one or more of the

offenses charged in Counts One and Two of this Indictment, to

wit, conspiracy to commit securities fraud, mail fraud and wire

fraud, in violation of Title 15, United States Code, Sections

78j(b) and 78ff, Title 17, Code of Federal Regulations, Section

240.10b-5, and Title 18, United States Code, Sections 371, 1341

and 1343 (Count One), and securities fraud, in violation of Title

15, United States Code, Sections 78j(b) and 78ff, Title 17, Code

of Federal Regulations, Section 240.10b-5, and Title 18, United

States Code, Section 2 (Count Two), ROSS H. MANDELL, STEPHEN

SHEA, ADAM HARRINGTON, a/k/a "Adam Rukdeschel," ARN WILSON,

ROBERT GRABOWSKI, and MICHAEL PASSARO, the defendants, shall

forfeit to the United States, pursuant to Title 18, United States

Code, Section 981(a)(1)(C), and Title 28, United States Code,

Section 2461(c), any and all property, real and personal, that

32

constitutes or is derived from proceeds traceable to the commission of the said offenses, including but not limited to a sum of money representing the proceeds obtained as a result of the charged conspiracy and securities fraud offenses alleged in this Indictment.

**Substitute Asset Provision**

46.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of

said defendants up to the value of the forfeitable property
described above.

      (Title 18, United States Code, Section 981(a)(1)(C)
      and Title 28, United States Code, Section 2461(c).)

_____
FOREPERSON

_____
LEV L. DASSIN
Acting United States Attorney

34

Form No. USA-33s-274 (Ed. 9-25-58)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

## UNITED STATES OF AMERICA

- v. -

**ROSS H. MANDELL,**
**STEPHEN SHEA,**
**ADAM HARRINGTON, a/k/a "Adam Rukdeschel,"**
**ARN WILSON,**
**ROBERT GRABOWSKI, and**
**MICHAEL PASSARO,**

**Defendants.**

## INDICTMENT

09 Cr.

18 U.S.C. § 371, 15 U.S.C. §§ 78j(b) and 78ff,
and 17 C.F.R. § 240.10b-5

LEV L. DASSIN
Acting United States Attorney.