UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/4/18

ROSS MANDELL,
       Petitioner,

Vs.

Case No.:   16-cv-1186(PAC)
Case No.:   09-cr-6629(PAC)

UNITED STATES OF AMERICA,
       Respondent.

_____/

## MOTION FOR RELIEF UNDER FED. R. CIV. PROC. 60(SEQ)

COMES NOW, Petitioner Ross Mandell appearing Pro se respectfully submits this motion to vacate the Order from Honorable Judge Paul Crotty dated June 14, 2017, Docket # *16-CV-1186*, entered in the 28 U.S.C. § 2255 proceedings pursuant to Rule 60(b)(2,3,6) seq. of the Federal Rules of Civil Procedure. For the reasons that follow, Movant seeks further relief from the denial of the U.S.C. ORDER and also seeks an ORDER directing the Government to promptly reply to this fraud that was made upon the Court in the Habeas Proceedings conducted.

## PROCEDURAL HISTORY

In June, 2009, a Grand Jury indicted Petitioner Ross Mandell along with five co-defendants, Stephen Shea, Adam Harrington, Arn Wilson, Robert Grabowski and Michael Passaro. On December 14, 2010 a superseding indictment charged Petitioner with four crimes: (1) Conspiracy to Commit Securities Fraud; (2) Securities Fraud; (3) Wire Fraud; and (4) Mail Fraud.

Between January 23, 2011 and February 14, 2011, defendants Grabowski, Passaro, Wilson and Shea pled guilty to certain counts in the indictment pursuant to cooperation agreements. The remaining defendants Mandell and Harrington proceeded to trial commencing on June 20, 2011, and concluded on July 26, 2011. The jury found them guilty of those four counts.

On May 3, 2012, the Court sentenced Mandell to 144 months of imprisonment. Harrington was sentenced to 60 months. Both were convicted of the exact same four counts.

Mandell appealed his conviction and sentence on May 10, 2012. See United States v. Mandell, 752 F.3d 544 (2d. Cir. 2014), which was denied in August, 2014. Mandell self-surrendered to Federal Prison in Miami on September 10, 2014. The Supreme Court denied his Certiorari on February 23, 2015. See Mandell v. U.S., 1355 S.Ct. 1402, 191 L.ed 2d 373 (2015).

Mandell filed a motion pursuant to 28 U.S.C. § 2255 alleging Ineffective Assistance of Counsel in February 2016, which was denied on June 14, 2017. The Second Circuit denied his appeal for a Certificate of Appealability on October 18, 2017.

## JURISDICTION

Federal Rule of Civil Procedure 60(b) "allows a party to seek relief from a final judgment, and request reopening of a case, under a limited set of circumstances, including fraud, mistake, and newly discovered evidence." Gonzalez v. Crosby, 545 U.S., 125 S.Ct. 2641, 162 L.Ed. 2d 480 (2005). Under 60(b) "on motion and just terms, the court may relieve a party or its legal representative from final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been

discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; ... (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). "The Second Circuit has explained that Fed. R. Civ. P. is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceeding clauses." Jackson v. Pfau, No 9:10-cv-1484, 2012 U.S. Dist LEXIS 194460, 2012 WL 12883375, 2 (N.D.N.Y., Jan. 10, 2012)(quoting Transaero, Inc., v. La Fuerze Area Boliviana, 24 F.3d 457, 461 (2nd Cir. 1994)).

The courts have long recognized there are a class of cases where the conduct of counsel in actions brought under 60(b)(3) don't amount to fraud per se, nevertheless qualify under the Rules "savings clause." In Campaniello Imports v. Saporti Italia, 117 F.3d 655, 661 (2nd Cir. 1997) it was held, "Rule 60(b) 'savings clause allows a court to entertain an independent action to relieve a party from judgment, order or proceeding, or to set aside judgment for fraud upon the Court.'" Congress clearly wished to provide for such situations and made it part of the statute.

"A motion pursuant to Fed. R. Civ. P. 60(b) to vacate a judgment denying a habeas petition is not the same as a successive petition. It serves a different purpose - if successful, it results in the reopening of the original petition, not the vacatur of the underlying conviction - and raises different issues. Accordingly, such a motion is not subject to the gate keeping requirements applicable to successive petitions." Rodriguez v. Mitchell, 252 F.3d 191, 200 (2d Cir. 2nd Cir. 2001). "Not much is required to render a claim meritorious for Rule 60(b) purposes." Patraker v. The Council of the Environment of New York City, 02-cv-7382 - Judge Lewis A. Kaplan.

Pursuant to Gonzalez v. Crosby, 545 U.S. 524 (2005), "a Rule 60(b) Motion is proper if it 'attacks,' not the substance of the Federal Court's resolution of a claim on the merits, but some defect in the integrity of the Federal Habeas proceedings." Under such circumstances, the motion is properly brought under 60(b), and the District Court need not obtain prior authorization from the Appellate Court to entertain the claims for relief.

## LEGAL ARGUMENT

As stated above, Movant is qualified to file a motion pursuant to Fed. R. Civ. P. 60(b) and his motion is timely filed as the denial of his 28 U.S.C. § 2255 Motion and COA was on June 14, 2017, which is within the one year time period.

Additionally, this is not a second or successive motion pursuant to 28 U.S.C. § 2255 which necessitates the gate keeper requirements that must be approved at the Appellate level. It is instead a new motion not based on issues discussed prior but on newly discovered evidence and fraud on the Court, so as to avoid the risk of injustice to the parties and the "risk of undermining the public confidence in the judicial process." Liljeberg v. Health Acquisitions Corp., 486 U.S. 847, 864-65, 108 S. Ct. 2194, 100L Ed 2d 855 (1987).

This new evidence could not possibly have been discovered in time to move for a new trial under Rule 59(b), because it did not even come into existence until February 2, 2016 and Petitioner did not become aware of it until 2018 when he engaged in discussion with a fellow inmate who was also represented by Hoffman. In fact, newly discovered evidence reveals that Mandell's attorney, Jeffrey Hoffman was dishonest in the sworn affidavit he submitted in the 28 U.S.C. § 2255 Motion in Mandell v. U.S.

## NEW EVIDENCE

In the case of U.S. v. Sanders, 15-cr-574(LAK) at a February 2, 2016 evidentiary hearing in front of the Honorable Judge Lewis A. Kaplan, Jeffrey Hoffman was examined under oath on the topic of plea negotiations and states as follows. (Excerpts from this hearing are attached as "Exhibit 'A'".

Q: Now, you testified on Mr. Jackson's examination that you spend a lot of time negotiating a plea agreement or plea offer from the Government, right?

Hoffman: Correct.

Q: You also testified that Mr. Sanders expressed to you that he had no desire to plead guilty, correct?

Hoffman: Correct.

Q: So why were you spending the time negotiating a potential plea deal if Mr. Sanders was, in fact, not interested in pleading guilty.

Hoffman: Because that's my standard operating procedure in all criminal cases. I go down both roads of trying to get the best plea deal and preparing for trial. Often times, clients who express that they definitely want to go to trial and they have absolutely no intention of entering into any kind of plea deal, change that posture as cases go on, as more evidence comes in, and as we discuss the cases as we're proceeding. So having done this for lots of years, I found that if I don't go down the road of negotiating for pleas, because the client initially says, "I'm not interested," then when they become interested, I haven't gotten the best possible plea offer I can, and so I'm doing them a disservice."

In the instant case, Movant states emphatically that he urged Hoffman to meet with the Government, to proffer, and to seek a plea deal, from the beginning of his representation in November 2006 up to trial in June 2011. During this five year period prior to trial, Hoffman confirms in his sworn affidavit, that he never sought to negotiate or even enter into plea negotiations on Movant's behalf event though he acknowledged that Movant wanted to enter into discussions with the Government. This directly

-5-

contradicts his sworn statement in <u>Sanders</u> and is contrary to his "standard operating procedure in ALL criminal cases." Hoffman's response in his affidavit in the instant case. (Exhibit "B" #5)

> Hoffman:  Mr. Mandell maintained his innocence throughout the duration of my representation.  Before trial, it is my usual practice to have a conversation with my clients about whether they wish to plead guilty.  I do not recall any conversations in which Mr. Mandell expressed interest in pleading guilty. He desired to proceed to trial and believed that he would be found not guilty.

Mr. Hoffman's statement in his affidavit and actual actions in representing Movant are in direct conflict and contrast with his "standard operating procedure" as clearly set forth in the new evidence presented by his sworn testimony in the Sanders hearing.

So, the essential question at the heart of this Motion is:  What is it that could possibly cause a seasoned and highly experienced attorney who, in his words, has "done this for lots of years," to not "go down both roads of trying to get the best plea deal and preparing for trial," as he claims he does in "all criminal cases?"  This is especially curious in light of the fact that Movant asked him to seek a plea numerous times over the course of five years and that Hoffman believes not doing so would be doing a client a "disservice."  The answer is obvious.

This new evidence clearly presents the fact that Hoffman purposely avoided providing the zealous and unconflicted representation he was obligated to provide and Movant deserved to receive.  Why?  Because Hoffman was simultaneously representing his close friend and business partner Steve Altman, who was up to his eyeballs in exposure in this case and mysteriously never even got indicted despite having been demonstrated time and again throughout Movant's trial as the key puppet master in the Government's alleged scheme.

Every other defense attorney involved in the instant case sought out a plea deal for their client. Why? Because it's actually standard operating procedure for all White Collar criminal attorneys. Even Adam Harrington met with the Government and proffered, prior to going to trial. Convicted of the same four counts as Petitioner, Harrington was sentenced to 60 months imprisonment and was released from FPC Miami in March 2017. Petitioner who never had a chance to meet with the Government or negotiate, was sentenced to 144 months and remains incarcerated still facing many years of prison. Why then did Hoffman deviate from accepted legal practice and from his own "standard operating procedure" and refuse to negotiate a plea deal? He should be held accountable for this discrepancy.

In his affidavit (Exhibit "B") Hoffman acknowledges that he did in fact represent his partner Steve Altman in several proceedings before the Securities and Exchange Commission ("SEC") that spanned several years at the same time that he was simultaneously representing Mandell throughout the instant case. Altman has been portrayed as a key figure in the instant case by the Government and the witnesses. In fact, he was listed in the Petitioner's Pre-Sentence Report as a "Related Case" (Exhibit "C") and he was listed on the Government Witness list (Exhibit "D"). The fact the Altman was a client, friend and a business partner of Hoffman has never been challenged and remains an undisputed fact.

This new evidence is sworn testimony in open court, under oath, during a thorough and proper examination (evidentiary hearing) before Judge Lewis A. Kaplan. This testimony in _Sanders_, by Hoffman, is both coherent and sensible, and any legal authority would find it appropriate, proper and in accordance with the rules and regulations that govern attorneys conduct. When reviewing this testimony and comparing it to his sworn affidavit in the instant case, it

-7-

becomes obvious that the Sanders testimony undercuts the credibility of his entire affidavit presented in response to Movant's § 2255 Motion. Hoffman, an officer of the court, has been dishonest and incomplete in these sworn statements and Petitioner never had a chance to cross-examine him. This is both blatant and obvious and constitutes a fraud on the court.

## FRAUD ON THE COURT

In addition, Hoffman makes the following sworn statement in his affidavit in the instant case. (Exhibit "B", #9):

> (#9) None of my defense tactics were motivated or influenced by my representation of Mr. Altman in his SEC disciplinary proceedings.

The new evidence, Hoffman's testimony in the Sanders case, clearly demonstrates that this statement is not true at all. Hoffman changed a major defense tactic by not pursuing a plea agreement for Movant. He deviated from his own "standard operating procedure in all criminal cases." This is blatantly obvious and right there in black-and-white, in his own words, in the new Sanders evidence. This new evidence proved that this point is clearly a fraud on the court, in addition to past and prior proof of all of Hoffman's purposeful misstatements, none of which have ever been addressed by the Court or Hoffman in any respect.

Moreover, this statement constitutes a fraud on the court. On day two of Voire Dire, Judge Crotty reads the Government's Witness List aloud to the Court to determine if there is any connection between a Government witness and a member of the Court. (Exhibit "E"). Steve Altman's name is read from the Government's list (Exhibit "D"). There was no reaction from Hoffman. No objection. No sidebar. No mention of possible conflict, of a Curcio hearing. There was silence from Hoffman and from the Government prosecutors.

Even though Hoffman was representing Altman at that very time, was his business partner, his landlord, and close friend he made a conscious decision to sit mute and withhold that information from the Court and from Petitioner. He made a decision to conceal his related and highly prejudicial representation of this Government witness. Hoffman had an ethical and professional responsibility to disclose his relationship with this witness but he specifically chose not to. As a result, his Honor never had the opportunity to inquire as to the depth of his conflict. Petitioner was denied a "Curcio Hearing" which would have informed him as to the risks of proceeding with this potential conflict.

Hoffman was entirely motivated and influenced by his representation of Altman in this case, despite his sworn statement to the contrary. His decision to conceal his relationship with Altman was devastating to Petitioner's defense. Altman's name appears over 200 times at trial. He is cited by four separate Government witnesses as engaging in criminal acts. He is singled out by both AUSA's and by Judge Crotty before the jury, as a lawyer that engaged in serious criminal acts. He is listed in Court documents as a "Related Case." Hoffman knew that if the Government called Altman as a witness that he could not cross examine him properly. He was virtually silent in his cross-examination of witnesses that brought out Altman's name on direct. Any reasonable and unconflicted attorney would have taken numerous different courses of action throughout Movant's trial.

Moreover, had Hoffman chosen the proper course of action and revealed his relationship with Altman, Movant would have been properly informed as to the risks of proceeding with Hoffman as his lawyer, knowing that Altman was a witness against him. Petitioner NEVER had that knowledge or understanding. Movant would have immediately terminated his relationship with Hoffman and

sought out other counsel. Any other legitimate counsel would have sought out a plea deal as Movant had always desired and would have no loyalty to Altman at all. No question about it, there would have been a much different outcome had Hoffman been honest with the Court and disclosed his relationship with Altman. His deliberate action during Voir Dire to conceal his relationship with Altman had dire consequence to Mandell's entire defense. His self serving dishonesty in his sworn affidavit in the instant case is clearly a fraud on the court.

Fraud on the court should embrace "only the species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial tasks of adjudging cases." Hadges v. Yonkers Racing Corp., 48 F.3d 1325 (2nd Cir. 1995). (Quoting Kupferman, 459 F.2d at 1078).

This causes the integrity of the earlier § 2255 Motion to be in question and as such "it may be used to challenge a defect in the integrity of Federal Habeas Proceeding." Gonzalez v. Crosby, 545 U.S. 524, 532, 125 S.Ct. 2641, 162 L.Ed. 480 (2005). (Involving a Rule 60(b) Motion in 28 U.S.C. § 2255 proceeding).

This occurred in the instant case and therefore in the interests of truth and justice Hoffman must be examined in open court before your Honor at an evidentiary hearing in the instant case. He cannot be allowed to hide behind his sworn statements in his affidavit, which are clearly contradicted by his very own words and actions. Petitioner should have the right to cross examine him before your Honor, in open Court, which necessitates an evidentiary hearing.

In addition, I have requested documents from the Government and this Court, that your Honor ordered the Government to produce to me in June, 2011.

I have made the request in my § 2255 Motion, and I have also motioned this Court for those records. To date they have never been produced. Additionally, I have filed a Freedom of Information Act Request, I have sought these files from AUSA Andrew Chan by certified mail, I have filed a request with the N.Y. Civil Liberties Union, and have included this evidence in my N.Y. State Bar Association complaint that is currently being investigated. I have asked the BAR to order Hoffman to produce these records.

In June, 2011, roughly three weeks before trial, it was agreed that the Government would provide ALL 3500 materials including 302's and other files central to their investigation and my defense. In excess of 100 files were produced including substantial files on ALL witnesses and defendants that have been associated with this criminal case. The only files that have never been produced were ANY files relating to Steven Altman, Hoffman's client, partner and friend. Furthermore, how can the Government possibly state that they did not and do not have to produce these files? Your Honor expressly ordered them to do so. These files will show Hoffman's further involvement with Altman and the Government and will prove additional information regarding fraud on the Court.

In the interest of "preserving the integrity of these proceedings," I ask the Court to order the Government to finally produce the Steve Altman files they agreed to do in 2011, as you previously ordered. As of this date, the Government has stonewalled my requests for these documents even though they should have been produced years ago. Withholding this evidence casts a shadow on these proceedings and ignores the very agreement that your Honor ordered seven years ago.

## CONCLUSION

Petitioner Mandell humbly requests that this Court grant the relief that he is requesting. To order an evidentiary hearing, to order the Government to produce the Steven Altman files and 3500 material that has been outstanding since 2011, and if appropriate to reduce his sentence to time already served.

The facts and legal argument in this motion more than support this conclusion for the following reasons:

(1)  This Court does have jurisdiction to entertain this motion since the Federal Rules of Civil Procedure 60(b) gives the Court the power to lift a judgment for any reason that justifies relief;

(2)  This motion is timely filed since Petitioner was denied 18 U.S.C. Motion § 2255 relief on June 14, 2017, which is within the one year time limit;

(3)  This motion is not a second or successive 18 U.S.C. § 2255 Motion and therefore does not necessitate approval on the appellate level since it relates to new issues never brought before this Court;

(4)  Petitioner Mandell should be granted an evidentiary hearing as newly discovered evidence reveals that Jeffrey Hoffman was dishonest, misleading and provided false statements in the sworn affidavit that he submitted to this Court in Petitioner's Motion § 2255. These facts challenge a defect in the integrity of a Federal Habeas Decision and as such, a Rule 60(b) is now appropriate. Gonzalez v. Crosby, (2005).

(5)  A large disparity in sentence exists with Petitioner Mandell in violation of 18 U.S.C. § 3552(a)(6), when compared to the other defendants in the instant case.  Adam Harrington convicted of the same four counts as Mandell served a 60 month sentence.  Mandell is serving 144 months;

(6)   Petitioner Mandell spent over 5 years on bail from the time of his indictment in July 2009 - September 2014, much of that time on an ankle bracelet.  He has a perfect record of compliance during that entire time. Petitioner has received no credit for that time served;

(7)   Petitioner Mandell has rehabilitated himself during his time in prison.  He has a perfect record of compliance in the 45 months that he has been incarcerated.  He has received no disciplinary actions.  Petitioner has both taught and taken many classes in prison and has been actively involved in helping other inmates in Alcoholics Anonymous and other Drug Rehabilitation Programs;

(8)   Post sentencing rehabilitation should be considered by the Court as noted in the 2010 Supreme Court case, Pepper v. U.S.  Petitioner Mandell has done substantial work to improve himself mentally, physically and spiritually while incarcerated.

Therefore, based on the evidence, fact and argument presented above, Petitioner Mandell humbly requests that this Court grant him the relief requested and order the Government to produce the Altman files, grant an evidentiary hearing to examine Hoffman's misstatements, reduce his sentence, and any other relief that this court deems appropriate.

Respectfully Submitted,

6/1/2018

Ross Mandell, Pro se
Inmate # 62490-054
Federal Prison Camp
P.O. Box # 779800
Miami, Florida 33177

-13-

## EXHIBIT LIST

**EXHIBIT "A"** – Transcripts from the Sanders evidentiary hearing. (New Evidence).

**EXHIBIT "B"** – Hoffman's sworn affidavit from Movant's 28 U.S.C. § 2255 Motion.

**EXHIBIT "C"** – Movant's Pre-Sentence Report (page revealing Steve Altman as a "Related Case."

**EXHIBIT "D"** – Government Witness List.

**EXHIBIT "E"** – Movant's trial transcript – Day two Voir Dire.

# EXHIBIT
# A

1

G22OSAN1

1  UNITED STATES DISTRICT COURT
1  SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
2
3  UNITED STATES OF AMERICA,
3
4              v.                          12 Cr. 574 (LAK)
4                                          15 Cv. 2808 (LAK)
5  SCOTT SANDERS,
5
6              Defendant.                  Hearing
6
7  ------------------------------x
7
8                                          New York, N.Y.
8                                          February 2, 2016
9                                          9:30 a.m.
9
10
10  Before:
11
11              HON. LEWIS A. KAPLAN,
12
12                                    District Judge
13
13
14                      APPEARANCES
14
15  PREET BHARARA
15       United States Attorney for the
16       Southern District of New York
16  PAUL M. KRIEGER, ESQ.
17  MATTHEW PODOLSKY, ESQ.
17       Assistant United States Attorney
18  COLLEEN GEIER
18       USAO Paralegel
19
19  BOIES, SCHILLER & FLEXNER, LLP
20       Attorneys for Defendant
20  RANDALL W. JACKSON, ESQ.
21  KATHERINE CAUDILL, Paralegal
22  Also Present:  Katheryn Searles, Postal Inspector
22
23
24
25

57

G230SANH                        Hoffman - Cross

1   using Upstate addresses on his insurance policies, correct?
2   A.  Correct.
3   Q.  And then in number 2, under that paragraph, he says, "The
4   underwriters were aware of that," correct?
5   A.  Correct.
6   Q.  So he's justifying his conduct, correct?
7   A.  In essence, yes.
8   Q.  Now, you testified on Mr. Jackson's examination that you
9   spent a lot of time negotiating a plea agreement or plea offer
10  from the government, right?
11  A.  Correct.
12  Q.  You also testified that Mr. Sanders expressed to you that
13  he had no desire to plead guilty, correct?
14  A.  Correct.
15  Q.  So why were you spending the time negotiating a potential
16  plea if Mr. Sanders was, in fact, not interested in pleading
17  guilty?
18  A.  Because that's my standard operating procedure in all
19  criminal cases.  I go down both roads of trying to get the best
20  plea offer and preparing for trial.
21       Oftentimes, clients who express that they definitely want
22  to go to trial and they have absolutely no intention of
23  entering into any kind of a plea change that posture as cases
24  go on, as more evidence comes in, and as we discuss the cases
25  as we're proceeding.

58

G23OSANH                    Hoffman - Cross

1    So having done this for lots of years, I found that if I
2    don't go down the road of negotiating for pleas because the
3    client initially says, "I'm not interested," then when they
4    become interested, I haven't gotten the best possible plea
5    offer I can, and so I'm doing them a disservice.
6    Q.   Jumping around topics here a little bit, Mr. Hoffman.
7         You testified earlier about the March, 2012 meeting at
8    which Mr. Lankler attended?
9    A.   Correct.
10   Q.   And Marcie Sanders was present at that meeting, correct?
11   A.   Correct.
12   Q.   What, if any, instructions had Mr. Sanders given you when
13   talking about the government's criminal investigation in front
14   of his wife?
15   A.   Scott's -- not just at that meeting, but Scott said to me
16   continuously, including prior to that meeting, that he never
17   wanted me to say anything that would upset his wife, that would
18   make it seem like he had a difficult situation.  He wanted
19   always to be upbeat and never say anything that would upset
20   her.
21   Q.   Referring to the October, 2012 written plea offer.  You
22   testified about your conversations with Mr. Sanders about that
23   plea offer, right?
24   A.   Correct.
25   Q.   Isn't it true, around the time of that October, 2012 plea

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# EXHIBIT
# B

AFFIDAVIT OF JEFFREY C. HOFFMAN, ESQ.

STATE OF NEW YORK )
) ss.
COUNTY OF NEW YORK )

JEFFREY C. HOFFMAN, pursuant to Title 28, United States Code, Section 1746, hereby affirms under penalty of perjury the truth of the facts set forth herein:

1.     I am a currently of counsel at the law firm of Blank Rome, LLP.  I graduated from the New York University School of Law and was admitted to practice law in the State of New York in 1967.

2.     In or around November 2006, I was retained by Sky Capital, LLC shortly after a search warrant was executed at the company's offices by the Federal Bureau of Investigation ("FBI").  When Ross Mandell was indicted in July 2009, I represented him through the end of trial and sentencing, which was on or about July 26, 2011.  I was relieved as counsel for Mr. Mandell on or about May 24, 2012.  The Court then appointed Matthew Brissenden, P.C. as substitute counsel to represent Mr. Mandell on direct appeal.

3.     I also represented Steven Altman, Esq. after the Securities and Exchange Commission ("SEC") issued an Order Instituting Administrative Proceedings on January 30, 2008.  An Administrative Law Judge ("ALJ") held hearings on May 5-7 and May 29, 2008, in which I represented Altman.  The ALJ imposed a nine-month suspension on Altman on January 14, 2009.  I also represented Mr. Altman when the SEC's Office of the General Counsel appealed the sentence.  The SEC ultimately imposed a permanent suspension on Altman from appearing or practicing as an attorney before the SEC.  Altman later filed a *pro se* petition for judicial review of the SEC's opinion with the United States Court of Appeals for the District of Columbia Circuit, which was denied.  *See Altman v. SEC*, 666 F.3d 1322 (D.C. Cir. 2011).  As

far as I know, the allegations relating to Mr. Altman's SEC administrative proceedings did not relate to Mr. Mandell's criminal proceedings.

4.      Shortly after the FBI conducted its search at Sky Capital, Mr. Mandell and I discussed whether it was wise for him to schedule a meeting with the Government. Mr. Mandell believed that it was possible to convince the Government that he was innocent. I advised Mr. Mandell that this was not a good idea because of the risk of making false statements in such a meeting, which might result in additional charges.

5.      Mr. Mandell maintained his innocence throughout the duration of my representation. Before trial, it is my usual practice to have a conversation with my clients about whether they wish to plead guilty. I do not recall any conversations in which Mr. Mandell expressed interest in pleading guilty. He desired to proceed to trial and believed that he would be found not guilty. I am also familiar with the practices of the United States Attorney's Office for the Southern District of New York, and I understand that their office policy is to require any potential cooperators to admit their involvement in all criminal conduct. I do not recall any conversations in which Mr. Mandell expressed interest in cooperating with the Government.

6.      One of my primary strategies at trial was to establish that Mr. Mandell acted in good faith and relied upon the advice of counsel. As a result, I met with Mr. Altman before the trial to determine whether he would be a helpful witness for Mr. Mandell. I concluded that Mr. Altman's testimony would not materially support an advice of counsel defense or any other defense.

7.      Mr. Mandell provided me with the names of witnesses whom he believed would be potentially useful at trial. We discussed each of these potential witnesses. I personally met with or attempted to contact all of the suggested witnesses who appeared to be potentially helpful

to Mr. Mandell's defense. One of these witnesses, Raymond Knox, traveled to New York City from Northern Ireland. After meeting with Mr. Knox for several hours, however, I concluded that Mr. Knox's testimony would not be helpful to Mr. Mandell's defense.

8.      Before and during the trial, Mr. Mandell and I discussed whether he should testify. Mr. Mandell proposed to testify that: (1) he did not handle the day-to-day responsibilities at Thornwater Company or Sky Capital LLC; (2) the practice of "crossing stocks" is permissible; (3) he was unaware of the conversations between his brokers and clients; and (4) the testimony of the Government's cooperating witnesses was untrue. I ultimately advised him not to testify. I explained that Mr. Mandell would be required to essentially say that the Government's four cooperating witnesses all gave false testimony. Mr. Mandell would also be cross-examined by the Government and confronted with recorded phone conversations demonstrating his knowledge of the fraudulent scheme. When I practiced cross-examining Mr. Mandell, I did not think that the jury would find his responses to be credible. Mr. Mandell agreed with my assessment and chose not to testify.

9.      None of my defense tactics were motivated or influenced by my representation of Mr. Altman in his SEC disciplinary proceedings.

10.     I do not recall any conversation in which Mr. Altman sought my legal advice regarding the criminal investigation of Mr. Mandell, Thornwater Company, or Sky Capital LLC.

Dated: New York, New York
       July 18, 2016

_____
Jeffrey C. Hoffman, Esq.

# EXHIBIT
# C



P56619/EPF



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
## PROBATION OFFICE

January 9, 2012

Jeffrey Hoffman/Susan Wolfe
260 Madison Ave
New York, NY 10016

| | | |
|---|---|---|
| RE: | | MANDELL, ROSS H. |
| DOCKET # | | S1 09 CR 662-01 (PAC) |
| DATE MAILED | | January 09, 2012 |

Dear Counsel:

Enclosed is a copy of the Presentence report regarding your client, who is to be sentenced in the U.S. District Court, Southern District of New York, before the Honorable Paul A. Crotty on February 01, 2012. Please review and discuss its contents with your client.

Pursuant to Rule 32 (f)(1) and (2) of the Rules of Criminal Procedure, kindly communicate any objections to the Probation Department within fourteen (14) days from receipt of this report. The Probation Department's completed report must be submitted to the Court no later than seven (7) days prior to sentencing.

Your objection may be noted on the enclosed form or in a separate correspondence.

Very truly yours,

Geoffrey P. Steele
Supervising U.S. Probation Officer
212-805-0040 ext. 5158

By _Emily P. Frankelis_ (TE)
Emily P. Frankelis
Senior U.S. Probation Officer
212-805-0040 ext. 5193

Enc.
Cc:    AUSA Katherine Goldstein/Pablo Quinones

| NYC Office Location: | NYC Office Mailing Address: | White Plains Office: | Middletown Office: |
|---|---|---|---|
| Woolworth Building | Daniel Patrick Moynihan | United States Courthouse | 25 South Street |
| 233 Broadway, 14th Floor | United States Courthouse | 300 Quarropas Street | Middletown, NY 10940-6435 |
| New York, NY 10279 | 500 Pearl Street | White Plains, NY 10601-1901 | 845.344.2789 |
| 212.805.0040 | New York, NY 10007-1312 | 914.390.4040 | 845.344.2722 - Fax |
| 212.805.0047 - Fax | | 914.390.4055 - Fax | |



P56619

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
### PROBATION OFFICE

## PRESENTENCE INVESTIGATION REPORT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Docket No.:** S1 09 CR 662-01 (PAC) |
| **vs.** | ) | |
| **ROSS H. MANDELL** | ) | |
| | ) | **Sentence Date:** February 1, 2012 |

---

**Prepared For:**    HONORABLE PAUL A. CROTTY
U.S. District Judge

**Prepared By:**    EMILY P. FRANKELIS
Senior U.S. Probation Officer
212-805-5193

**Assistant U.S. Attorneys**
Katherine Goldstein
212-637-2262
katherine.goldstein@usdoj.gov

Pablo Quinones
212-637-2487
pablo.quinones@usdoj.gov

**Defense Counsel**
Jeffrey C. Hoffman
Susan C. Wolfe
Hoffman & Pollok LLP
260 Madison Avenue
New York, NY 10016
212-679-2900
jchoffman@hpplegal.com
scwolfe@hpplegal.com

**Offense:** Count 1: CONSPIRACY TO COMMIT SECURITIES FRAUD, WIRE FRAUD, AND MAIL FRAUD (18 USC 371) CLASS D FELONY
Count 2: SECURITIES FRAUD (15 USC 78j(b) and 78ff; 17 CFR 240.10b-5; and 18 USC 2) CLASS C FELONY
Count 3: WIRE FRAUD (18 USC 1343 AND 2) CLASS C FELONY
Count 4: MAIL FRAUD (18 USC 1341 AND 2) CLASS C FELONY

**Penalties:** Ct. 1: Maximum of 5 years of imprisonment; maximum of 3 years of supervised release; maximum fine of the greatest of $250,000 or twice the gross gain or gross loss; $100 special assessment
Ct. 2: Maximum of 20 years of imprisonment; maximum of 3 years of supervised release; maximum fine of the greatest of $5,000,000 or twice the gross gain or gross loss; $100 special assessment
Cts. 3&4: Maximum of 20 years of imprisonment; maximum of 3 years of supervised release; maximum fine of the greatest of $250,000 or twice the gross gain or gross loss; $100 special assessment

MANDELL, ROSS H.                                                      P56619 - EPF

5

Status of Co-defendants

10.   On January 25, 2011, ROBERT GRABOWSKI (P56622/unassigned) pled guilty as
      charged in Counts 1 through 4 of Superseding Indictment S1 09 CR 662 (PAC),
      before the Honorable Paul A. Crotty. Sentencing is pending.

11.   On January 28, 2011, ARN WILSON (P56623/unassigned) pled guilty as charged in
      Counts 1 through 4 of Superseding Indictment S1 09 CR 662 (PAC), before the
      Honorable Paul A. Crotty. Sentencing is pending.

12.   On January 28, 2011, MICHAEL PASSARO (P56620/unassigned) pled guilty as
      charged in Counts 1 through 4 of Superseding Indictment S1 09 CR 662 (PAC),
      before the Honorable Paul A. Crotty. Sentencing is pending.

13.   On February 14, 2011, STEPHEN SHEA (P56621/unassigned) pled guilty as charged
      in Counts 1 and 2 only of Superseding Indictment S1 09 CR 662 (PAC), before the
      Honorable Paul A. Crotty. Sentencing is pending.

14.   On July 26, 2011, ADAM HARRINGTON (P56624/C. Tyler) was found guilty as
      charged in Counts 1 through 4 of Superseding Indictment S1 09 CR 662 (PAC),
      subsequent to a jury trial before the Honorable Paul A. Crotty. HARRINGTON is
      scheduled to be sentenced on February 2, 2012.

Related Case(s)

15.   On June 12, 2009, Mckyle Clyburn (P56443/unassigned) allocuted to his criminal
      conduct as charged in two-count Information 09 CR 598 (LAK), before the
      Honorable Ronald L. Ellis . The Information charged him with one count of
      Conspiracy to Commit Securities Fraud, Mail Fraud, and Wire Fraud and one count
      of Securities Fraud. Sentencing is pending before the Honorable Lewis A. Kaplan.

16.   On July 14, 2011, Philip Akel (P56628/R. Kapitansky) allocuted to his criminal
      conduct as charged in three-count Information 09 CR 659 (BSJ), before the
      Honorable Kevin Nathaniel Fox. The Information charged him with one count of
      Conspiracy to Commit Securities Fraud, Mail Fraud, and Wire Fraud; one count of
      Securities Fraud; and one count of Distribution and Possession with Intent to
      Distribute Cocaine. Sentencing is pending before the Honorable Barbara S. Jones.

17.   Steven Altman was not prosecuted.

# EXHIBIT
# D

'Quinones, Pablo (USANYS)"
<Pablo.Quinones@usdoj.gov>

06/20/2011 09:02 AM

To  "Marlon_Ovalles@nysd.uscourts.gov" <Marlon_Ovalles@nysd.uscourts.gov>

cc  "Jeffrey C. Hoffman" <jchoffman@hpplegal.com>, Michael Bachner <mb@bhlawfirm.com>

Subject  Emailing: Names and Entities for Jury Selection.wpd

Marlon,

The attached is the Government's list of names and entities to be asked about during jury selection.

-Pablo

The message is ready to be sent with the following file or link attachments:

Names and Entities for Jury Selection.wpd

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments.  Check your e-mail security settings to determine how attachments are handled.

☐ Names and Entities for Jury Selection.wpd
    7K

NAMES

## Worked at Thornwater &/or Sky Capital

Philip Akel
Guy Clemente
McKyle Clyburn
Robert Grabowski
Michael Passaro
Arn Wilson
Stephen Shea
Edward McMahon
James Crimi
Steven Altman
Harris Kiperman
Michael Recca
Jason Muscari
Mario Figueroa
Cecilia Mackie
Fran Duffy
Jeffrey Haddad
Jesse Bravo
Roy Martinez
Darwin Martinez
Yaritza Bermudez

## Law Enforcement

Donna O'Moore - The London Stock Exchange, Head of Regulation

SA Kurt Dengler - the FBI
SA Jessica Kruger - the FBI
SA Adam Roeser - the FBI
SA Mark Munster - the FBI

## Investors

David Ash
Sean Costelloe
Mark Halper
Stuart Grassie
James Hankins
Adrian Howard
Eitan Mizrahi
Anthony O'Hanlon
Richard Stapen
David Weaver
Barry Whitehead
Bart Delgado

## Others

# EXHIBIT E

1610man2                      Jury Selection

1          THE COURT:  They are Tala Nazareno and Ms. Ann Reinig.

2      Does anyone know Ms. Nazareno or Ms. Reinig.

3          Now, I'm going to list for you, read you from a list

4      of potential witnesses in this case, or names of people you may

5      hear in this case.  Names of corporate entities, ask you if you

6      are familiar with any of them, or had any business dealings

7      with them.  I'll read the list very slowly:

8          Philip Akel, Guy Clemente, McKyle Clyburn, Robert

9      Grabowski, Michael Passaro.  Arn Wilson.  Steven Shea, Edward

10     McMahon.  James Crimi.  Steven Altman.  Harris Kipperman.

11     Michael Recca.  Jason Muscari.  Mario Figueroa.  Cecilia

12     Mackie, Fran Duffy, Jeffrey Haddad, Jesse Barvo, Roy Martinez,

13     Darwin Martinez, Yaritza Bermudez.  Donna O'Moore, she works

14     for the London Stock Exchange.  Special Agent Kurt Dengler of

15     the FBI.  Special Agent Jessica Kruger of the FBI.  Have you

16     ever met Agent Roeser and Agent Munster.  David Ash.  John

17     Costelloe, Mark Halper.  Stuard Grassie.  James Hankins.

18     Adrian Howard.  Eitan Mizrahi.  Anthony O'Hanlon.  Richard

19     Stapen.  David Weaver.  Barry Whitehead.  Bart Delgado.  Alper

20     Cetingok.  Susan VanBerg, Seymour Reich.  C. Ben David.  Robert

21     Taylor, Kenneth Walker, Annie Yang.  Thomas McMillen.

22         And then here is some corporate entities:

23         Thornwater Company, also known as Thornwater.

24         Lanesborough Holdings.  St. James Holdings, Dorchester

25     holdings, Lisa Incredible Edibles.  Ticketplante.com,