UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
 _____
| USDC SDNY                          |
| DOCUMENT                           |
| ELECTRONICALLY FILED               |
| DOC #:                             |
| DATE FILED: 8/29/18                |
|_____|
```

ROSS MANDELL,
        Petitioner,

Vs.                                          Case No.:  16-cv-1186(PAC)
                                             Case No.:  09-cr-6629(PAC)

UNITED STATES OF AMERICA,
        Respondent.

_____/

### REPLY TO GOVERNMENT'S LETTER IN OPPOSITION TO MOVANT'S MOTION FOR RELIEF PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)

The Movant, Ross Mandell filing Pro se, respectfully submits this Motion in response to the Government's Letter in Opposition to Movant's Rule 60(b) Motion seeking relief pursuant to the Federal Rules of Civil Procedure 60(b).

The Government misstates and mischaracterizes certain evidence and simply chooses to ignore the most telling and revealing documentary evidence that Movant has presented. Because of the Government's inability to address these facts and documents that are in the record and that are unimpeachable as actual evidence make certain that an evidentiary hearing is required in the interest of "preserving the integrity of these proceedings."

The Government argues at the outset that Movant's Rule 60(b) is time barred. They correctly state that the motion must be brought "no more than a year after the entry of the Judgment or Order or the date of the proceeding." However, the entry of the Judgment and Order signed by Judge Crotty and entered into the record is clearly June 14, 2017. (See Exhibit #1)(Entry of

Order, Date of Judgment). Movant's motion was filed on June 4, 2018, which is less than a year from the entry of the Judgment and Order which made clear in the original motion. Therefore, the motion is timely.

Additionally, the Government is incorrect when they state there is a procedural default. They point out that theoretically, the "newly discovered evidence" which is Hoffman's sworn testimony in another unrelated case might have been discovered sooner. The problem with this case is Movant is Pro se and has been in prison since September 2014 with virtually no resources. It is abundantly unreasonable to hold Movant to a standard that requires him to have promptly reviewed the transcripts of every single proceeding involving Jeffrey Hoffman. It was only by a miracle of chance and luck that Movant met another inmate in a Prison Camp in Miami who had also been represented by Jeffrey Hoffman. AS already stated in Movant's motion, it was only recently that the connection was made and the inmate was willing to share the transcript of Hoffman's testimony at an evidentiary hearing in his case. There is no reasonably possible way that Movant might have found this evidence any sooner than he did. Movant has used every possible resource available to diligently search the records for additional evidence. This, in turn means that this is "newly discovered evidence," since Movant did diligently pursue a legal course of action once he became aware of the evidence. Because the Government cannot address the documented evidence that is exhibited and will be discussed further below, they are reduced to making petty and superfluous arguments rather than address the actual facts and evidence that prove there has been "fraud on the court."

It is clear from the "newly discovered evidence" that Hoffman gave false and incomplete testimony in his sworn affidavit in Movant's 2255 Motion. The Government purposely minimizes and misstates this evidence in the very first paragraph in their response. The Government states that "Hoffman

typically seeks to obtain plea bargains for his criminal clients." However, this is NOT what the evidence says. In black and white, in a Court hearing, Hoffman states Under oath:

> "That's my standard operating procedure in ALL criminal cases. I go down both roads of trying to get the best plea deal and preparing for trial. Often time, clients who express that they definitely want to go to trial and they have absolutely no intention of entering into any kind of plea deal, change that posture as cases go on, as more evidence comes in and as we discuss the cases as we're proceeding. So having done this for lots of years, I found that if I don't go down the road of negotiating for pleas, because the client initially says, 'I'm not interested,' then when they become interested, I haven't gotten them the best possible plea offer I can, so I'm doing them a disservice." (See Exhibit #2)(Transcripts of Sanders' Evidentiary Hearing, New Evidence).

The above is the sworn testimony of Jeffrey Hoffman, under oath, in front of the Honorable Judge Lewis A. Kaplan. Hoffman is a highly experienced and seasoned trial attorney who measures every word that he says. It is crystal clear and quite obvious, that Hoffman deviated from his "standard operating procedure in all criminal cases" that he has been doing for "lots of years" in the instant case. The overriding question is "Why"? The Government provides no answer and neither does the sworn affidavit offered by Hoffman and the Government when opposing Movant's 2255 Motion.

However, the documented evidence in Movant's motion that the Government fails to address provides this Court with the answers. Over and over again the Government states that Hoffman represented Steve Altman in an unrelated case. In fact, we found that he did represent Altman in several cases and actions involving the SEC. These facts only came to light after Movant filed his 2255 Motion and discovered this evidence. It was never revealed by Hoffman or the Government to the Court or to Movant during the investigation, trial and sentencing. Only after the Movant was convicted, right before sentencing, was it revealed by the Government that Steve Altman was actually and definitively a "RELATED CASE."

In fact, immediately before sentencing, the Probation Department working with the U.S. Attorney's Office provided Movant a copy of his Pre-Sentence Report. (See Exhibit #3)(Pre-Sentence Report). Listed on the same page as every prosecuted defendant who was found or pled guilty is Steve Altman. In black and white, as clear as day; "Steve Altman was not prosecuted." He is listed as a "RELATED CASE." He is NOT listed as an unrelated case. These documents were compiled by the Government, for the Government and the Court. Why does the Government NOW state that Altman's case was unrelated? The evidence shows us why.

At all times during the entirety of Movant's criminal case, Jeffrey Hoffman was Steve Altman's lawyer, friend and his partner. These facts are unchallenged and uncontested. The evidence clearly suggest that after meetings and negotiations with the Government, Steve Altman becomes a witness for the prosecution, (See Exhibit #4)(Government Witness List) and it was Jeffrey Hoffman who actually represented Altman while he was negotiating with the Government. Hoffman was his attorney the entire time. In Movant's 2255 Motion included as an exhibit are actual legal bills and time sheets from Altman and Bellinger that proved Hoffman's presence with him on calls with and at the Southern District of New York on multiple occasions. (See Exhibit #5)(Altman Bills / Bellinger Bills). The question remains, why would Hoffman and Altman be on conference calls together and in meetings together with the Government prosecutors, when Hoffman was solely representing Movant in the instant case? Furthermore, Altman was a target and a Government witness in this same case as well. Hoffman was simultaneously representing Altman at the SDNY while at the same time purporting to be representing Movant's sole interest in the very same criminal case.

This "new evidence" which shows that Hoffman deviated from his "standard operating procedure" in the instant case, sheds a new light on all

the evidence that has previously been presented in Movant's 2255 Motion.   The only explanation is that Hoffman had been representing Altman the entire time in the same criminal investigation and negotiating with the SDNY prosecutors on Altman's behalf, while simultaneously setting Movant up to take the fall. Both the Government and Hoffman have been trying to hide this fact from the Court, but they have never denied it.   They have chosen to dance around this truth and have simply ignored the damning evidence that Movant has presented. Hoffman could NEVER have brought Movant in to negotiate, proffer, or plea, because he was representing Altman in the very same and RELATED case listed here in the Government's very own documents.   That is the reason the Government has never turned over the Altman files even after the court ordered them to do so in June, 2011.   That is the reason that Hoffman deviated from his "standard operating procedure" that he does in "ALL criminal cases" for "lots of years."

The only way to resolve this problem is with an evidentiary hearing in open Court with Hoffman ordered to give sworn testimony and be cross-examined. It is necessary to address all the unanswered questions that the evidence presented here demonstrates.   No question, there is a dark cloud over these proceedings and both the Government and Hoffman must be held accountable and finally be ordered to address what the hard evidence reveals.

Furthermore, on Day Two of Voir dire, Jeff Hoffman makes a conscious decision to sit mute when Steve Altman's name is read aloud by Judge Crotty from the Government's Witness list in open Court. (See Exhibit #6)(Voir dire Transcripts).   This non-action, this deliberate decision to sit quiet rather than reveal his relation to this Government witness constitutes a "fraud on the court," as well as a "lapse in representation."   Once again, the Government chooses to simply ignore this most telling piece of evidence that is in the record.   To date, they have never addressed this misbehavior by

Hoffman, both a professional and ethical violation. (Interestingly enough, investigators from the Disciplinary Committee of the BAR Association for the State of New York immediately seized on this specific piece of evidence. They requested copies from the trial transcripts and Movant has provided them. They were as stunned by Hoffman's misbehavior as this Court should be).

Why on earth would a highly experienced and seasoned trial attorney, who in his own biography states, that he specializes in representing attorneys in trouble, choose to ignore his professional and ethical duty to inform the Court and his client, of his highly prejudicial relationship with this Government witness? The Rules of Professional Conduct state that he must. Clearly, there is at the very least, a "potential conflict." What would compel Jeffrey Hoffman to consciously choose to violate his professional responsibility? He took a specific and definitive action by choosing to stay silent. The question is why?

The obvious answer is because then Judge Crotty would do his professional duty and begin questioning Hoffman as to the extent of his relationship with Altman and the instant case. It would become revealed that both Hoffman and Altman had been negotiating with the Government together, and AUSA's Pablo Quinones and Katherine Goldstein were very much aware of this. There would have been a Curcio Hearing, and once the truth became revealed, Movant would have immediately fired Hoffman and sought other counsel, delaying the trial. Movant would have retained unconflicted counsel and had a chance to meet with the Government, to proffer, to come to a plea agreement. The outcome of the proceeding would have been entirely different, and Hoffman must now be questioned at an evidentiary hearing in Court under oath, and the truth must finally be revealed, as all the evidence points directly to these facts. The Altman files (3500 material) that were ordered to be delivered to Movant since June 2011, prior to trial, will reveal much or all of these facts. The

Government has suggested that Movant is on a "fishing expedition," however ALL the evidence that the Government has NEVER addressed, leads to the same obvious conclusion. Hoffman horse-traded Mandell for Altman, while he was representing Mandell. (Despite FOIA requests for the Altman files being submitted in November, 2017, no such files have yet been produced. Moreover, despite separate requests to the DOJ, FBI, and SEC, Movant is still waiting for the Altman files and the Disciplinary Committee for the New York State BAR Association, which is investigating this case, has also enquired as to whether or not files have been produced.)

In addition, this "new evidence" proves that Hoffman's "defense tactics" were both motivated and influenced by his representation of Altman. (See Exhibit #7)(Hoffman Affidavit #9). Therefore, this sworn statement is clearly untrue. This false statement by Hoffman in his sworn affidavit further constitutes "fraud on the court."

Hoffman never sought plea negotiations in the 5 years between the FBI Raid and the commencement of trial. The Government states that Movant never wanted him to. However, the "new evidence" shows that Scott Sanders never wanted to plead guilty either. (See Exhibit #2)(Transcripts of Sanders Evidentiary Hearing).

> Q: Now, you testified on Mr. Jackson's examination that you spend a lot of time negotiating a plea agreement or plea offer from the Government, right?
>
> Hoffman:   Correct.
>
> Q: You also testified that Mr. Sanders expressed to you that he had no desire to plead guilty, correct?
>
> Hoffman:   Correct.
>
> Q: So why were you spending the time negotiating a potential plea deal if Mr. Sanders was, in fact, not interested in pleading guilty.
>
> Hoffman:   Because that's my standard operating procedure in ALL criminal cases.

It is in black and white, in sworn testimony from Hoffman's own mouth. However, in that case, an unconflicted Hoffman does what he does in "all criminal cases," regardless of what the client wants. He spends a lot of time negotiating a plea deal in the Sanders case even though Sanders has no intention of pleading guilty. However, in the instant case, he refuses to bring Movant in to meet with the Government, or even explore plea negotiations as he does in "all criminal cases," even though Movant emphatically stated his desire to meet with, proffer and plea with the Government.

In the meanwhile, the Government tries to undermine all of Movant's incontrovertible evidence of Hoffman's malfeasance and betrayal of loyalty owed to Movant by stating "even assuming that there were divided loyalties, the Court found that there was no lapse of representation." However, to the contrary, the new evidence clearly demonstrates that there was a very definite lapse, and I'm sure his Honor would have already reached this clear conclusion had this evidence come to light before.

With respect to the law, the Government does a competent job of laying it out, but then fails to support their position as they mischaracterize the facts to try to suit their purposes.

"A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." LoCascio v. United States, 305 F.3d 56 (2d Cir. 2004)(quoting United States v. Schwartz, 283 F.3d 76,90 (2d Cir. 2002)); see also United States v. Williams, 372 F.3d 96, 102 (2d Cir. 2004)(noting that the Sixth Amendment "right to counsel includes a 'correlative right to representation that is free from conflicts of interest")(quoting Wood v. Georgia, 450 U.S. 261, 271 (1981)).

An "Actual Conflict" occurs when "the interests of a defendant and his attorney diverge with respect to a material, factual, or legal course of action." Williams, 372 F.3d at 102. "Once the defendant establishes that there was an actual conflict, he need not prove prejudice, but simply that a

-8-

'lapse in representation' resulted from the conflict." U.S. v. Malpiedi, 52 F.3d 465, 469 (2d Cir. 1995).

Steve Altman's role as a central, integral, and essential figure in Movant's case is completely undeniable. His name, role and alleged illegal activities came up at trial almost as much as Movant's. It would be practicing "willful blindness" to ignore the fact that Hoffman joined Altman in numerous meetings with/at the U.S. Attorney's office and then magically, Altman never got hit with a single charge. Hoffman was clearly and secretly representing Movant and Altman at the same time and in the same criminal case. Hoffman had a definite duty and obligation to disclose this simultaneous representation because it heavily impacted and prejudiced Movant throughout Movant's case.

Movant's new evidence clearly points to a "lapse in representation" resulting from the conflict. U.S. v. Malpiedi, 52 F.2d 465 (2d Cir. 1995). Petitioner is highly confident that an evidentiary hearing and provision of the requested 3500 materials will provide additional significant evidence of even more "fraud on the court" and reveal even more dishonesty. It is impossible to conceive that but for counsel's unprofessional errors things most certainly would have turned out differently. U.S. v. Kliti, 156 F.3d 150 (2d Cir. 1998).

Applicable Law states the grant of a Rule 60(b) motion affords the Movant "extraordinary judicial relief, it is invoked upon a showing of exceptional circumstances." Katz v. Mogus, 2012 WL 263462, at *3 (S.D.N.Y. Jan 25, 2012)(quoting Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986). Accordingly a party seeking relief under the Rule must show "highly convincing" evidence in support of its motion, good cause for its "failure to act sooner," and that the non-moving party would not suffer undue hardship. Koticky v. U.S. Fid. & Guar. Co., 817 F.2d 6,9 (2d Cir. 1987).

The Petitioner does just that by acting swiftly with his 60(b) Motion when the new evidence was presented to him at Miami Federal Prison Camp. This, in fact, created the exceptional circumstance in this case.

Additionally, the Government tries to relitigate an already decided issue, Conflict of Interest, that is not an issue in this motion. The issue here is "fraud on the court" based on Hoffman's dishonest and misleading statements in his sworn affidavit submitted in Movant's 2255 Motion which are clearly at odds with his sworn statements in the Sanders case. (See Exhibit #2)(Transcripts of Sanders Evidentiary Hearing, New Evidence).

The Government uses these arguments to mislead the Court and to misdirect the Court's focus away from the hard evidence that the Government has not addressed and that demonstrates "actual fraud on the court." This newly discovered evidence sheds a new light on the hard evidence already exhibited in Petitioner's 2255 Motion and therefore an evidentiary hearing is required in the "interest of truth and justice" to maintain the "integrity of these judicial proceedings."

## CONCLUSION

Based upon the law, arguments and evidence presented above, said 60(b) Motion should be granted and an evidentiary hearing should be ordered. The Altman files must be turned over, as so ordered by Judge Crotty in June 2011, and the reopening of Movant's 2255 motion so ordered, and any other relief that this Court finds is just, should be granted.

Respectfully Submitted,

Ross Mandell, Pro se
Inmate # 62490-054
Federal Prison Camp
P.O. Box # 779800
Miami, Florida 33177

-10-

## CERTIFICATE OF SERVICE

This is to certify that I have this day, served a copy of the petitioner's reply upon the individual listed below by depositing the same in the United States mail with adequate first class postage affixed thereon.

ANDREW CHAN
ASSISTANT UNITED STATES ATTORNEY
UNITED STATES ATTORNEY'S OFFICE
SOUTHERN DISTRICT OF NEW YORK
ONE SAINT ANDREW'S PLAZA
NEW YORK, NEW YORK 10007

8.27.18
_____
Date

Ross Mandell, Pro se
Inmate # 62490-054
Federal Prison Camp
P.O. Box # 779800
Miami, Florida 33177

## EXHIBIT LIST

| Exhibit #1 | 'Entry of Judgment and Order dated 6/14/2017 / Appeal Documents showing Judgment / Order dated 6/14/2017'.... |
|---|---|
| Exhibit #2 | Transcripts of Sanders' Evidentiary Hearing, New Evidence.... |
| Exhibit #3 | Pre-Sentence Report Proving Steve Altman as a "Related Case".... |
| Exhibit #4 | Government Witness List from trial showing Steve Altman as a Government witness.... |
| Exhibit #5 | Legal Bills / Time Sheets from Steve Altman and Mike Bellinger proving Hoffman and Altman negotiating with the SDNY prosecutors together.... |
| Exhibit #6 | Voir Dire Transcripts from trial on day two of the instant case showing Hoffman sitting mute as Altman's name is read aloud from the Government witness list.... |
| Exhibit #7 | Hoffman Affidavit from Movant's 2255 Motion.... |

E X H I B I T    # 1

'Entry of Judgment and Order dated 6/14/2017 / Appeal
Documents showing Judgment / Order dated 6/14/2017'....

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

ROSS A. MANDELL,

                                        Petitioner,

                -against-

UNITED STATES OF AMERICA,
                                Respondent.
-------------------------------------------------------------X

USDC
DOCUMENT
ELECTRON...
DOC #: ____
DATE FILED: 6/14/2017

16 **CIVIL** 1186 (PAC)
09 **CR.** 662 (PAC)
**JUDGMENT**

Petitioner Ross H. Mandell having moved pursuant to 28 U.S.C. § 2255 for reversal of

his conviction and to vacate his sentence, and the matter having come before the Honorable Paul

A. Crotty, United States District Judge, and the Court, on May 23, 2017, having rendered its

Opinion and Order that Mandell fails to establish a plausible claim of ineffective assistance of

counsel based on Hoffman's purported actual or potential conflict of interest, or Hoffman's

supposed failure to file an interlocutory appeal; denying his petition in all respects, and no

hearing is necessary, directing the Clerk of Court to close Case No. 1186, it is,

     **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Opinion and Order dated May 23, 2017, Mandell's motion pursuant to 28 U.S.C. § 2255

is denied in all respects, and no hearing is necessary; the Court finds that because Mandell has

not "made a substantial showing of the denial of a constitutional right," a certificate of

appealability will not issue and case No. 16 Civ. 1186 is closed.

**DATED:** New York, New York
           June 14, 2017

RUBY J. KRAJICK

Clerk of Court

**BY:** _____

Deputy Clerk

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON 6/14/2017

**General Docket**
**Court of Appeals, 2nd Circuit**

Docketed: 07/13/2017

**Court of Appeals Docket #:** 17-2164
**Nature of Suit:** 2510 PRISONER PET-Sentence (2255)
Mandell v. United States of America
**Appeal From:** SDNY (NEW YORK CITY)
**Fee Status:** Paid

**Case Type Information:**
  1) Prisoner
  2) Federal
  3) Section 2255

**Originating Court Information:**
  **District:** 0208-1 : 16-cv-1186
  **Trial Judge:** Paul A. Crotty, U.S. District Judge
  **Date Filed:** 02/11/2016

| Date Order/Judgment: | Date Order/Judgment EOD: | Date NOA Filed: | Date Rec'd COA: |
|---|---|---|---|
| 06/14/2017 | 06/14/2017 | 07/11/2017 | 07/13/2017 |

**Prior Cases:**
  None

**Current Cases:**
  None

**Panel Assignment:**   Not available

| | |
|---|---|
| Ross H. Mandell (Federal Prisoner: 62490-054) Petitioner - Appellant | Ross H. Mandell, - **Terminated:** 07/14/2017 [NTC Pro Se] Federal Correctional Institution Miami P.O. Box 779800 Miami, FL 33177 |
| | Ross H. Mandell, - [NTC Pro Se] Federal Correctional Institution Miami Satellite Camp P.O. Box 779800 Miami, FL 33177 |
| -------------------------- | |
| United States of America Respondent - Appellee | Andrew Ken-Wei Chan, Assistant U.S. Attorney Direct: 212-637-1072 |

E X H I B I T   # 2

Transcripts of Sanders' Evidentiary
Hearing, New Evidence....

1

G22OSAN1
1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
2
3   UNITED STATES OF AMERICA,
3
4              v.                        12 Cr. 574 (LAK)
4                                        15 Cv. 2808 (LAK)
5   SCOTT SANDERS,
5
6              Defendant.               Hearing
6
7   ------------------------------x
7
8                                        New York, N.Y.
8                                        February 2, 2016
9                                        9:30 a.m.
9
10
10  Before:
11
11                      HON. LEWIS A. KAPLAN,
12
12                                       District Judge
13
13                      APPEARANCES
14
14
15  PREET BHARARA
15       United States Attorney for the
16       Southern District of New York
16  PAUL M. KRIEGER, ESQ.
17  MATTHEW PODOLSKY, ESQ.
17       Assistant United States Attorney
18  COLLEEN GEIER
18       USAO Paralegel
19
19  BOIES, SCHILLER & FLEXNER, LLP
20       Attorneys for Defendant
20  RANDALL W. JACKSON, ESQ.
21  KATHERINE CAUDILL, Paralegal
22  Also Present:  Katheryn Searles, Postal Inspector
22
23
24
25

                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

G23OSANH                        Hoffman - Cross
1   using Upstate addresses on his insurance policies, correct?
2   A.  Correct.
3   Q.  And then in number 2, under that paragraph, he says, "The
4   underwriters were aware of that," correct?
5   A.  Correct.
6   Q.  So he's justifying his conduct, correct?
7   A.  In essence, yes.
8   Q.  Now, you testified on Mr. Jackson's examination that you
9   spent a lot of time negotiating a plea agreement or plea offer
10  from the government, right?
11  A.  Correct.
12  Q.  You also testified that Mr. Sanders expressed to you that
13  he had no desire to plead guilty, correct?
14  A.  Correct.
15  Q.  So why were you spending the time negotiating a potential
16  plea if Mr. Sanders was, in fact, not interested in pleading
17  guilty?
18  A.  Because that's my standard operating procedure in all
19  criminal cases.  I go down both roads of trying to get the best
20  plea offer and preparing for trial.
21      Oftentimes, clients who express that they definitely want
22  to go to trial and they have absolutely no intention of
23  entering into any kind of a plea change that posture as cases
24  go on, as more evidence comes in, and as we discuss the cases
25  as we're proceeding.

58

G23OSANH                          Hoffman - Cross

1    So having done this for lots of years, I found that if I
2    don't go down the road of negotiating for pleas because the
3    client initially says, "I'm not interested," then when they
4    become interested, I haven't gotten the best possible plea
5    offer I can, and so I'm doing them a disservice.
6    Q.  Jumping around topics here a little bit, Mr. Hoffman.
7         You testified earlier about the March, 2012 meeting at
8    which Mr. Lankler attended?
9    A.  Correct.
10   Q.  And Marcie Sanders was present at that meeting, correct?
11   A.  Correct.
12   Q.  What, if any, instructions had Mr. Sanders given you when
13   talking about the government's criminal investigation in front
14   of his wife?
15   A.  Scott's -- not just at that meeting, but Scott said to me
16   continuously, including prior to that meeting, that he never
17   wanted me to say anything that would upset his wife, that would
18   make it seem like he had a difficult situation.  He wanted
19   always to be upbeat and never say anything that would upset
20   her.
21   Q.  Referring to the October, 2012 written plea offer.  You
22   testified about your conversations with Mr. Sanders about that
23   plea offer, right?
24   A.  Correct.
25   Q.  Isn't it true, around the time of that October, 2012 plea

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E X H I B I T     # 3

Pre-Sentence Report Provide Steve Altman
as a "Related Case"....



P56619

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
## PROBATION OFFICE

### PRESENTENCE INVESTIGATION REPORT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Docket No.:** S1 09 CR 662-01 (PAC) |
| **vs.** | ) | |
| **ROSS H. MANDELL** | ) | |
| | ) | **Sentence Date:** February 1, 2012 |

**Prepared For:**   HONORABLE PAUL A. CROTTY
U.S. District Judge

**Prepared By:**   EMILY P. FRANKELIS
Senior U.S. Probation Officer
212-805-5193

**Assistant U.S. Attorneys**
Katherine Goldstein
212-637-2262
katherine.goldstein@usdoj.gov

Pablo Quinones
212-637-2487
pablo.quinones@usdoj.gov

**Defense Counsel**
Jeffrey C. Hoffman
Susan C. Wolfe
Hoffman & Pollok LLP
260 Madison Avenue
New York, NY 10016
212-679-2900
jchoffman@hpplegal.com
scwolfe@hpplegal.com

**Offense:** Count 1: CONSPIRACY TO COMMIT SECURITIES FRAUD, WIRE FRAUD, AND MAIL FRAUD (18 USC 371) CLASS D FELONY

Count 2: SECURITIES FRAUD (15 USC 78j(b) and 78ff; 17 CFR 240.10b-5; and 18 USC 2) CLASS C FELONY

Count 3: WIRE FRAUD (18 USC 1343 AND 2) CLASS C FELONY

Count 4: MAIL FRAUD (18 USC 1341 AND 2) CLASS C FELONY

**Penalties:** Ct. 1: Maximum of 5 years of imprisonment; maximum of 3 years of supervised release; maximum fine of the greatest of $250,000 or twice the gross gain or gross loss; $100 special assessment

Ct. 2: Maximum of 20 years of imprisonment; maximum of 3 years of supervised release; maximum fine of the greatest of $5,000,000 or twice the gross gain or gross loss; $100 special assessment

Cts. 3&4: Maximum of 20 years of imprisonment; maximum of 3 years of supervised release; maximum fine of the greatest of $250,000 or twice the gross gain or gross loss; $100 special assessment

*Exhibit* 

P56619/EPF



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
## PROBATION OFFICE

**Michael J. Fitzpatrick**
Chief
U.S. Probation Officer

**Cheryl L. Holmes**
Sr. Deputy Chief
U.S. Probation Officer

**James T. Blackford**
Deputy Chief
U.S. Probation Officer

**Chris A. Palladino**
Deputy Chief
U.S. Probation Officer

January 9, 2012

Jeffrey Hoffman/Susan Wolfe
260 Madison Ave
New York, NY 10016

RE:  <u>MANDELL, ROSS H.</u>
DOCKET # <u>S1 09 CR 662-01 (PAC)</u>
DATE MAILED <u>January 09, 2012</u>

Dear Counsel:

Enclosed is a copy of the Presentence report regarding your client, who is to be sentenced in the U.S. District Court, Southern District of New York, before the Honorable <u>Paul A. Crotty</u> on <u>February 01, 2012</u>. Please review and discuss its contents with your client.

Pursuant to Rule 32 (f)(1) and (2) of the Rules of Criminal Procedure, kindly communicate any objections to the Probation Department <u>within fourteen (14) days from receipt of this report.</u> The Probation Department's completed report must be submitted to the Court no later than seven (7) days prior to sentencing.

Your objection may be noted on the enclosed form or in a separate correspondence.

Very truly yours,

Geoffrey P. Steele
Supervising U.S. Probation Officer
212-805-0040 ext. 5158

By *Emily P. Frankelis (XL)*

Emily P. Frankelis
Senior U.S. Probation Officer
212-805-0040 ext. 5193

Enc.
Cc: AUSA <u>Katherine Goldstein/Pablo Quinones</u>

| NYC Office Location: | NYC Office Mailing Address: | White Plains Office: | Middletown Office: |
|---|---|---|---|
| Woolworth Building<br>233 Broadway, 14th Floor<br>New York, NY 10279<br>212.805.0040<br>212.805.0047 - Fax | Daniel Patrick Moynihan<br>United States Courthouse<br>500 Pearl Street<br>New York, NY 10007-1312 | United States Courthouse<br>300 Quarropas Street<br>White Plains, NY 10601-1901<br>914.390.4040<br>914.390.4055 - Fax | 25 South Street<br>Middletown, NY 10940-6435<br>845.344.2789<br>845.344.2722 - Fax |

2

MANDELL, ROSS H.                                      P56619 - EPF

5

### Status of Co-defendants

10.   On January 25, 2011, ROBERT GRABOWSKI (P56622/unassigned) pled guilty as charged in Counts 1 through 4 of Superseding Indictment S1 09 CR 662 (PAC), before the Honorable Paul A. Crotty. Sentencing is pending.

11.   On January 28, 2011, ARN WILSON (P56623/unassigned) pled guilty as charged in Counts 1 through 4 of Superseding Indictment S1 09 CR 662 (PAC), before the Honorable Paul A. Crotty. Sentencing is pending.

12.   On January 28, 2011, MICHAEL PASSARO (P56620/unassigned) pled guilty as charged in Counts 1 through 4 of Superseding Indictment S1 09 CR 662 (PAC), before the Honorable Paul A. Crotty. Sentencing is pending.

13.   On February 14, 2011, STEPHEN SHEA (P56621/unassigned) pled guilty as charged in Counts 1 and 2 only of Superseding Indictment S1 09 CR 662 (PAC), before the Honorable Paul A. Crotty. Sentencing is pending.

14.   On July 26, 2011, ADAM HARRINGTON (P56624/C. Tyler) was found guilty as charged in Counts 1 through 4 of Superseding Indictment S1 09 CR 662 (PAC), subsequent to a jury trial before the Honorable Paul A. Crotty. HARRINGTON is scheduled to be sentenced on February 2, 2012.

### Related Case(s)

15.   On June 12, 2009, Mckyle Clyburn (P56443/unassigned) allocuted to his criminal conduct as charged in two-count Information 09 CR 598 (LAK), before the Honorable Ronald L. Ellis . The Information charged him with one count of Conspiracy to Commit Securities Fraud, Mail Fraud, and Wire Fraud and one count of Securities Fraud. Sentencing is pending before the Honorable Lewis A. Kaplan.

16.   On July 14, 2011, Philip Akel (P56628/R. Kapitansky) allocuted to his criminal conduct as charged in three-count Information 09 CR 659 (BSJ), before the Honorable Kevin Nathaniel Fox. The Information charged him with one count of Conspiracy to Commit Securities Fraud, Mail Fraud, and Wire Fraud; one count of Securities Fraud; and one count of Distribution and Possession with Intent to Distribute Cocaine. Sentencing is pending before the Honorable Barbara S. Jones.

17.   Steven Altman was not prosecuted.

E X H I B I T   # 4

Government Witness List from trial showing
Steve Altman as a Government witness....

NAMES

**Worked at Thornwater &/or Sky Capital**

Philip Akel
Guy Clemente
McKyle Clyburn
Robert Grabowski
Michael Passaro
Arn Wilson
Stephen Shea
Edward McMahon
James Crimi
Steven Altman
Harris Kiperman
Michael Recca
Jason Muscari
Mario Figueroa
Cecilia Mackie
Fran Duffy
Jeffrey Haddad
Jesse Bravo
Roy Martinez
Darwin Martinez
Yaritza Bermudez

**Law Enforcement**

Donna O'Moore - The London Stock Exchange, Head of Regulation

SA Kurt Dengler - the FBI
SA Jessica Kruger - the FBI
SA Adam Roeser - the FBI
SA Mark Munster - the FBI

**Investors**

David Ash
Sean Costelloe
Mark Halper
Stuart Grassie
James Hankins
Adrian Howard
Eitan Mizrahi
Anthony O'Hanlon
Richard Stapen
David Weaver
Barry Whitehead
Bart Delgado

**Others**

E X H I B I T   # 5

Legal Bills / Time Sheets from Steve Altman and
Mike Bellinger proving Hoffman and Altman
negotiating with the SDNY prosecutors together....

*Exhibit #86*

ALTMAN & COMPANY P.C.
COUNSELORS AT LAW
260 MADISON AVENUE 22ND FLOOR
NEW YORK, NEW YORK 10016

2 2-663 7600 · PHONE
2 2-663 7666  FAX

December 18, 2006

Sky Capital LLC
Sky Capital Holdings Ltd.
Sky Capital Enterprises Inc.
110 Wall Street
New York, New York 10005
Attention: Ross H. Mandell

FOR PROFESSIONAL SERVICES RENDERED
expenses paid and advice and counseling on various
securities matters during the period November 1, 2006
through and including November 30, 2006 all as set
forth below and in the accompanying time detail
reports.

Attorney Time Charges:
| | | |
|---|---|---|
| S. Altman    (198.45 hours @ $355/hr) | $70,449.75 | |
| E. Rosenberg (100.20 hours @ $350/hr) | 35,070.00 | $105,519.75 |

Expenses:
| | | |
|---|---|---|
| Filing Fees | $    45.00 | |
| Fedex | $   132.40 | |
| Local Delivery | $   227.30 | |
| Outside Copying | $ 1,291.51 | |
| Local Transportation | $   148.92 | |
| Westlaw | $ 1,210.00 | $  3,055.13 |

TOTAL THIS INVOICE                          $108,574.88

Amount Previously Paid On Account            $ 75,000.00

TOTAL NOW DUE                                $ 33,574.88

Please make check payable to Altman & Company P.C.
and send to the address below:

*Altman & Company P.C.*
*260 Madison Avenue, 22nd Floor, New York New York 10016*

6 HOUR
MEETING
w/ HOFFMAN
& SDNY!

| Name | Date | Description | Hours |
|---|---|---|---|
| | 11.9 | conf | .20 |
| Delgado | 11/10 | mtgs. Sky. JCH | 6.00 |
| (SDNY) | 11/10 | memos | .25 |
| Bruder | 11/10 | memos | .25 |
| Goldberg | 11/11 | confs re status and strategy | 1.75 |
| (SDNY) | 11/12 | confs re status and startegy | 2.50 |
| (SDNY) | 11/13 | mtgs, confs | 6.50 |
| (SDNY) | 11/13 | rev file | .25 |
| Woods | 11/14 | confs, mtgs | 6.00 |
| (SDNY) | 11/14 | confs, ltr | 1.25 |
| Utah | 11/14 | rev papers | 1.75 |
| Delgado | 11/15 | mtgs Sky | 7.50 |
| (SDNY) | 11/15 | corresp. re customer issues | .50 |
| Global | 11/15 | memos. confs RHM | .50 |
| Whitehead | 11/16 | mtgs and confs | 3.75 |
| (SDNY) | 11/17 | mtgs | 7.75 |
| (SDNY) | 11/19 | mtg, confs, memos | 2.00 |
| (SDNY) | 11/20 | memos. prep for and Global mtg. NASD. AUSA | 7.00 |
| (SDNY) | 11/20 | McMahon, Ferrari, Answer, MTD | 2.00 |
| Miles | 11/21 | mtgs | 6.50 |
| Global | 11/21 | mtgs. confs | 3.00 |
| (SDNY) | 11/21 | draft papers | 2.00 |
| SEC | 11/21 | rev answer | 1.25 |
| Miles | 11/21 | confs | .25 |
| Whitehead | 11/21 | Bellinger, Shea | 2.00 |
| (SDNY) | 11/22 | rev papers | 6.00 |
| SEC | 11/22 | rev papers | 1.25 |
| Whitehead | 11/22 | | |

DORSEY

DORSEY & WHITNEY LLP

Page 3

Sky Capital LLC
Client-Matter No.: 481743-00001
Invoice No.: 1382923

| | | | |
|---|---|---|---|
| | | | conference with M. Bellinger and C. Howard regarding strategy; review draft stipulation |
| 01/08/07 | G. Bellinger | 2.00 | Prepare for conference call with AUSA Goldberg; telephone conference with AUSA Goldberg; telephone conferences with J. Hoffman, S. Altman, J. Colangelo-Bryan, etc. |
| 01/09/07 | J. Colangelo-Bryan | 0.50 | Review voicemail messages from M. Bellinger regarding conflict of interest legal research; conference with C. Howard regarding same; review client interview memoranda |
| 01/09/07 | G. Bellinger | 2.25 | Telephone calls to C4, C3, C2 regarding conference call with U.S. Attorney's office; leave message with J. Colangelo-Bryan regarding conflicts research; read Sky Capital memo, McDade-Murtha provision |
| 01/10/07 | C. Howard | 0.60 | Research potential conflicts resulting from simultaneous representation of multiple clients |
| 01/10/07 | J. Colangelo-Bryan | 0.80 | Review voicemail messages from M. Bellinger regarding conflict issue; conference with C. Howard regarding same; conduct legal research regarding same; conference with managing clerk's office regarding Part I judge roster |
| 01/10/07 | G. Bellinger | 0.25 | Telephone conference regarding strategy with S. Altman; telephone call to C1 |
| 01/11/07 | C. Howard | 1.00 | Research whether prosecution may raise conflict issue during investigation |
| 01/11/07 | J. Colangelo-Bryan | 2.80 | Legal research regarding conflict of interest issues; exchange emails with M. Bellinger regarding same; conference with C. Howard regarding same |
| 01/11/07 | G. Bellinger | 0.75 | Discuss conflicts issue with Z. Carter |
| 01/12/07 | C. Howard | 2.00 | Research potential conflicts issue; address withdrawal of Order to Show Cause in Southern District of New York; fax proffer agreement to M. Bellinger |
| 01/12/07 | J. Colangelo-Bryan | 0.20 | Review client interview memoranda; draft email to C. Howard regarding same |
| 01/12/07 | G. Bellinger | 4.50 | Drive to Boca Raton from Miami; meet with M. Passaro; |

*WHY IS ALTMAN INVOLVED w HOFFMAN BELLINGER

Service charges are based on rates established by Dorsey & Whitney. A schedule of those rates has been provided and is available upon request. Disbursements and service charges, which either have not been received or processed, will appear on a later statement.

PAYMENT DUE UPON RECEIPT



**DORSEY**
DORSEY & WHITNEY LLP

Sky Capital LLC                                                                    Page 4
Client-Matter No.: 481743-00001
Invoice No.: 1382923

|  |  |  |  |
|---|---|---|---|
|  |  |  | return to Miami; discuss meeting with colleagues |
| 01/16/07 | C. Howard | 1.50 | Meet with M. Bellinger, J. Colangelo-Bryan and S. Altman regarding potential conflicts |
| 01/16/07 | J. Colangelo-Bryan | 1.50 | Conference with M. Bellinger, C. Howard and S. Altman regarding status and strategy; conference with M. Bellinger and C. Howard regarding same |
| 01/16/07 | G. Bellinger | 0.75 | Meet with S. Altman, C. Howard, J. Colangelo-Bryan regarding conflict of interest, outside counsel proposal; discuss C2 with team; telephone call to C2 regarding 1/18 meeting conflict |
| 01/17/07 | C. Howard | 0.60 | Research interaction of Sixth Amendment right to counsel and potential conflicts |
| 01/17/07 | G. Bellinger | 3.10 | Emails to A. Vinegrad; redraft retainer letters with enhanced conflict language; reread Turkish, Perez cases regarding conflict approach |
| 01/18/07 | C. Howard | 1.50 | Meet with Client #2 and M. Bellinger; research interaction of Sixth Amendment right to counsel and potential conflicts |
| 01/18/07 | J. Colangelo-Bryan | 0.40 | Conference with C2 regarding factual issues; conference with M. Bellinger and C. Howard regarding status and strategy |
| 01/18/07 | G. Bellinger | 4.50 | Meet with C6; discuss investigation with J. Hoffman, S. Altman; telephone call to C3; telephone call to J. Goldberg; telephone call with B. Walters; telephone conferences with C3; multiple calls regarding strategy; read memoranda |
| 01/19/07 | G. Bellinger | 0.25 | Telephone call to S. Altman regarding conflict issue; telephone call to C3 regarding meeting regarding conflict |
| 01/22/07 | G. Bellinger | 2.00 | Meet with C3 to discuss conflict of interest; telephone conference with M. Miller regarding C3 |
| 01/23/07 | G. Bellinger | 2.50 | Meet with C3 regarding conflict; discuss with outside counsel; telephone call to S. Altman regarding motion |
| 01/24/07 | C. Howard | 1.50 | Meet with Sky Capital employee and M. Bellinger |
| 01/24/07 | G. Bellinger | 2.25 | Discuss external representation issues with S. Altman; discuss representation of Sky Enterprises; meet with A. |

*Handwritten annotation:* Discussion w/ Hoffman & Altman re AUSA Goldberg

Service charges are based on rates established by Dorsey & Whitney.  A schedule of those rates has been provided and is available upon request.  Disbursements and service charges, which either have not been received or processed, will appear on a later statement.

PAYMENT DUE UPON RECEIPT



Sky Capital LLC                                                            Page 5
Client-Matter No.: 481743-00001
Invoice No.: 1382923

Wilson with C. Howard

01/25/07   G. Bellinger        0.75   Telephone conference with C3; telephone call to J.
                                      Goldberg; message from J. Goldberg; telephone call to J.
                                      Hoffman

01/26/07   G. Bellinger        1.25   Telephone call to R. Mandell; telephone call to J. Hoffman,
                                      S. Altman; meet with S. Altman regarding matter

*(handwritten: calls w/ Hoffman & Altman??)*

           Total Hours        61.15

                                              Total for Legal Fees          $32,407.50

## Disbursements and Service Charges

| | |
|---|---:|
| Computerized Legal Research – Westlaw search done on 01/15/07 | 141.75 |
| Computerized Legal Research – Westlaw search done on 12/21/06 | 52.64 |
| Computerized Legal Research – Westlaw search done on 01/11/07 | 72.95 |
| Computerized Legal Research – Westlaw search done on 01/11/07 | 25.56 |
| Overnight Delivery Charges | 8.48 |
| Fax Charges | 15.30 |
| Photocopy Charges | 362.20 |
| Travel Expense -  Airfare for M. Bellinger to Fort Lauderdale, FL to interview M. Passaro 01/09/07 | 329.00 |

                          Total for Disbursements and Service Charges        $1,007.88

                                              Total This Invoice             $33,415.38

## Timekeeper Summary

| Timekeeper | Hours | Billed Rate | Amount |
|---|---|---|---|
| C. Howard | 12.90 | 265.00 | 3,418.50 |
| J. Shumofsky | 3.10 | 485.00 | 1,503.50 |
| J. Colangelo-Bryan | 9.80 | 460.00 | 4,508.00 |

Service charges are based on rates established by Dorsey & Whitney.  A schedule of those rates has been provided and is available upon request.  Disbursements and service charges, which either have not been received or processed, will appear on a later statement.
PAYMENT DUE UPON RECEIPT

## ))) DORSEY
DORSEY & WHITNEY LLP

Sky Capital Enterprise Inc.
Client-Matter No.: 481743-00001
Invoice No.: 1378785

same counsel

| | | | |
|---|---|---|---|
| 12/11/06 | G. Bellinger | 4.50 | Read materials in preparation for meeting; meet with AUSA J. Goldberg regarding representation of Sky Capital employees; discuss meeting and subsequent contacts |
| 12/12/06 | G. Bellinger | 5.00 | Meet with S. Altman regarding AUSA meeting; meet with employee C1 regarding confidential matters; telephone conferences with C4 |
| 12/12/06 | G. Bellinger | 0.25 | Read B. Wernz email regarding conflicts of interest, sharing of information |
| 12/13/06 | C. Howard | 2.60 | Meet with M. Bellinger, S. Waxman, and C4; draft letter to J. Goldberg regarding return of laptop computers; draft memorandum regarding meeting with C4 |
| 12/13/06 | G. Bellinger | 3.25 | Review all documents; prepare for client meetings |
| 12/15/06 | C. Howard | 3.00 | Meet with M. Bellinger, S. Waxman and C1 |
| 12/15/06 | S. Waxman | 3.00 | Sky Capital: interview of C4; |
| 12/15/06 | G. Bellinger | 4.00 | Interview C1 with S. Waxman, C. Howard; discuss matters regarding investigation, London interview; review notes |
| 12/16/06 | G. Bellinger | 1.25 | Read parallel proceedings article in New York Law Journal regarding; read memos of interviews with C4, AUSA Goldberg; telephone call to S. Altman regarding lack of conflict |
| 12/18/06 | C. Howard | 6.00 | Draft memoranda summarizing meetings with C2, C3, and C4; research article in Wall Street Journal regarding R. Mandell |
| 12/19/06 | C. Howard | 1.50 | Meet with M. Bellinger, S. Altman, and J. Hoffman |
| 12/19/06 | G. Bellinger | 3.25 | Telephone conference with S. Altman regarding meeting; telephone call to C5 regarding 12/22 meeting; telephone call to C6 regarding 12/22 meeting; meet with J. Hoffman, S. Altman regarding information gathering; read emails; draft memoranda |
| 12/20/06 | G. Bellinger | 0.25 | Telephone call from S. Altman regarding Sky Capital - Morgan Manhattan Moving; telephone call to C2 regarding dispute; telephone call to S. Altman |

*(handwritten annotation: "Hoffman & Altman meeting")*

Service charges are based on rates established by Dorsey & Whitney. A schedule of those rates has been provided and is available upon request. Disbursements and service charges, which either have not been received or processed, will appear on a later statement.

**PAYMENT DUE UPON RECEIPT**

02/05/2007 18:55 FAX  212 953 1207          DORSEY & WHITNEY THREE                    Ø015/018



Sky Capital LLC                                                        Page 3
Client-Matter No.: 481743-00001
Invoice No.: 1382923

|          |                    |        |                                                                                                                                                          |
|----------|--------------------|--------|----------------------------------------------------------------------------------------------------------------------------------------------------------|
|          |                    |        | conference with M. Bellinger and C. Howard regarding strategy; review draft stipulation |
| 01/08/07 | G. Bellinger       | 2.00   | Prepare for conference call with AUSA Goldberg; telephone conference with AUSA Goldberg; telephone conferences with J. Hoffman, S. Altman, J. Colangelo-Bryan, etc. |
| 01/09/07 | J. Colangelo-Bryan | 0.50   | Review voicemail messages from M. Bellinger regarding conflict of interest legal research; conference with C. Howard regarding same; review client interview memoranda |
| 01/09/07 | G. Bellinger       | 2.25   | Telephone calls to C4, C3, C2 regarding conference call with U.S. Attorney's office; leave message with J. Colangelo-Bryan regarding conflicts research; read Sky Capital memo, McDade-Murtha provision |
| 01/10/07 | C. Howard          | 0.60   | Research potential conflicts resulting from simultaneous representation of multiple clients |
| 01/10/07 | J. Colangelo-Bryan | 0.80   | Review voicemail messages from M. Bellinger regarding conflict issue; conference with C. Howard regarding same; conduct legal research regarding same; conference with managing clerk's office regarding Part I judge roster |
| 01/10/07 | G. Bellinger       | 0.25   | Telephone conference regarding strategy with S. Altman; telephone call to C1 |
| 01/11/07 | C. Howard          | 1.00   | Research whether prosecution may raise conflict issue during investigation |
| 01/11/07 | J. Colangelo-Bryan | 2.80   | Legal research regarding conflict of interest issues; exchange emails with M. Bellinger regarding same; conference with C. Howard regarding same |
| 01/11/07 | G. Bellinger       | 0.75   | Discuss conflicts issue with Z. Carter |
| 01/12/07 | C. Howard          | 2.00   | Research potential conflicts issue; address withdrawal of Order to Show Cause in Southern District of New York; fax proffer agreement to M. Bellinger |
| 01/12/07 | J. Colangelo-Bryan | 0.20   | Review client interview memoranda; draft email to C. Howard regarding same |
| 01/12/07 | G. Bellinger       | 4.50   | Drive to Boca Raton from Miami; meet with M. Passaro; |

*Handwritten note near 01/08/07 entry: Hoffman + Altman conference*

Service charges are based on rates established by Dorsey & Whitney. A schedule of those rates has been provided and is available upon request. Disbursements and service charges, which either have not been received or processed, will appear on a later statement.

PAYMENT DUE UPON RECEIPT



**DORSEY**
DORSEY & WHITNEY LLP

Sky Capital LLC
Client-Matter No.: 481743-00001
Invoice No.: 1382923

Page 4

|  |  |  |  |
|---|---|---|---|
|  |  |  | return to Miami; discuss meeting with colleagues |
| 01/16/07 | C. Howard | 1.50 | Meet with M. Bellinger, J. Colangelo-Bryan and S. Altman regarding potential conflicts |
| 01/16/07 | J. Colangelo-Bryan | 1.50 | Conference with M. Bellinger, C. Howard and S. Altman regarding status and strategy; conference with M. Bellinger and C. Howard regarding same |
| 01/16/07 | G. Bellinger | 0.75 | Meet with S. Altman, C. Howard, J. Colangelo-Bryan regarding conflict of interest, outside counsel proposal; discuss C2 with team; telephone call to C2 regarding 1/18 meeting conflict |
| 01/17/07 | C. Howard | 0.60 | Research interaction of Sixth Amendment right to counsel and potential conflicts |
| 01/17/07 | G. Bellinger | 3.10 | Emails to A. Vinegrad; redraft retainer letters with enhanced conflict language; reread Turkish, Perez cases regarding conflict approach |
| 01/18/07 | C. Howard | 1.50 | Meet with Client #2 and M. Bellinger; research interaction of Sixth Amendment right to counsel and potential conflicts |
| 01/18/07 | J. Colangelo-Bryan | 0.40 | Conference with C2 regarding factual issues; conference with M. Bellinger and C. Howard regarding status and strategy |
| 01/18/07 | G. Bellinger | 4.50 | Meet with C6; discuss investigation with J. Hoffman, S. Altman; telephone call to C3; telephone call to J. Goldberg; telephone call with B. Walters; telephone conferences with C3; multiple calls regarding strategy; read memoranda |
| 01/19/07 | G. Bellinger | 0.25 | Telephone call to S. Altman regarding conflict issue; telephone call to C3 regarding meeting regarding conflict |
| 01/22/07 | G. Bellinger | 2.00 | Meet with C3 to discuss conflict of interest; telephone conference with M. Miller regarding C3 |
| 01/23/07 | G. Bellinger | 2.50 | Meet with C3 regarding conflict; discuss with outside counsel; telephone call to S. Altman regarding motion |
| 01/24/07 | C. Howard | 1.50 | Meet with Sky Capital employee and M. Bellinger |
| 01/24/07 | G. Bellinger | 2.25 | Discuss external representation issues with S. Altman; discuss representation of Sky Enterprises; meet with A. |

*Handwritten annotation: "Hoffman and Altman"*

Service charges are based on rates established by Dorsey & Whitney. A schedule of those rates has been provided and is available upon request. Disbursements and service charges, which either have not been received or processed, will appear on a later statement.

PAYMENT DUE UPON RECEIPT

**E X H I B I T   # 6**

Voir Dire Transcripts from trial on day two of the
instant case showing Hoffman sitting mute as Altman's
name is read aloud from the Government witness list....

Case 1:09-cr-00662-PAC   Document 348   Filed 08/29/18   Page 36 of 39
Case 1:16-cv-01186-PAC   Document 32   Filed 06/04/18   Page 31 of 32

140

1610man2                    Jury Selection

1           THE COURT:  They are Tala Nazareno and Ms. Ann Reinig.

2       Does anyone know Ms. Nazareno or Ms. Reinig.

3           Now, I'm going to list for you, read you from a list

4   of potential witnesses in this case, or names of people you may

5   hear in this case.  Names of corporate entities, ask you if you

6   are familiar with any of them, or had any business dealings

7   with them.  I'll read the list very slowly:

8           Philip Akel, Guy Clemente, McKyle Clyburn, Robert

9   Grabowski, Michael Passaro.  Arn Wilson.  Steven Shea, Edward

10  McMahon.  James Crimi.  Steven Altman.  Harris Kipperman.

11  Michael Recca.  Jason Muscari.  Mario Figueroa.  Cecilia

12  Mackie, Fran Duffy, Jeffrey Haddad, Jesse Barvo, Roy Martinez,

13  Darwin Martinez, Yaritza Bermudez.  Donna O'Moore, she works

14  for the London Stock Exchange.  Special Agent Kurt Dengler of

15  the FBI.  Special Agent Jessica Kruger of the FBI.  Have you

16  ever met Agent Roeser and Agent Munster.  David Ash.  John

17  Costelloe, Mark Halper.  Stuard Grassie.  James Hankins.

18  Adrian Howard.  Eitan Mizrahi.  Anthony O'Hanlon.  Richard

19  Stapen.  David Weaver.  Barry Whitehead.  Bart Delgado. Alper

20  Cetingok.  Susan VanBerg, Seymour Reich.  C. Ben David.  Robert

21  Taylor, Kenneth Walker, Annie Yang.  Thomas McMillen.

22          And then here is some corporate entities:

23          Thornwater Company, also known as Thornwater.

24          Lanesborough Holdings.  St. James Holdings, Dorchester

25  holdings, Lisa Incredible Edibles.  Ticketplante.com,

**E X H I B I T   # 7**

Hoffman Affidavit from Movant's 2255 Motion....

AFFIDAVIT OF JEFFREY C. HOFFMAN, ESQ.

STATE OF NEW YORK              )
                               ) ss.
COUNTY OF NEW YORK             )

JEFFREY C. HOFFMAN, pursuant to Title 28, United States Code, Section 1746, hereby affirms under penalty of perjury the truth of the facts set forth herein:

1.      I am a currently of counsel at the law firm of Blank Rome, LLP. I graduated from the New York University School of Law and was admitted to practice law in the State of New York in 1967.

2.      In or around November 2006, I was retained by Sky Capital, LLC shortly after a search warrant was executed at the company's offices by the Federal Bureau of Investigation ("FBI"). When Ross Mandell was indicted in July 2009, I represented him through the end of trial and sentencing, which was on or about July 26, 2011. I was relieved as counsel for Mr. Mandell on or about May 24, 2012. The Court then appointed Matthew Brissenden, P.C. as substitute counsel to represent Mr. Mandell on direct appeal.

3.      I also represented Steven Altman, Esq. after the Securities and Exchange Commission ("SEC") issued an Order Instituting Administrative Proceedings on January 30, 2008. An Administrative Law Judge ("ALJ") held hearings on May 5-7 and May 29, 2008, in which I represented Altman. The ALJ imposed a nine-month suspension on Altman on January 14, 2009. I also represented Mr. Altman when the SEC's Office of the General Counsel appealed the sentence. The SEC ultimately imposed a permanent suspension on Altman from appearing or practicing as an attorney before the SEC. Altman later filed a *pro se* petition for judicial review of the SEC's opinion with the United States Court of Appeals for the District of Columbia Circuit, which was denied. *See Altman v. SEC*, 666 F.3d 1322 (D.C. Cir. 2011). As

to Mr. Mandell's defense. One of these witnesses, Raymond Knox, traveled to New York City from Northern Ireland. After meeting with Mr. Knox for several hours, however, I concluded that Mr. Knox's testimony would not be helpful to Mr. Mandell's defense.

8.      Before and during the trial, Mr. Mandell and I discussed whether he should testify. Mr. Mandell proposed to testify that: (1) he did not handle the day-to-day responsibilities at Thornwater Company or Sky Capital LLC; (2) the practice of "crossing stocks" is permissible; (3) he was unaware of the conversations between his brokers and clients; and (4) the testimony of the Government's cooperating witnesses was untrue. I ultimately advised him not to testify. I explained that Mr. Mandell would be required to essentially say that the Government's four cooperating witnesses all gave false testimony. Mr. Mandell would also be cross-examined by the Government and confronted with recorded phone conversations demonstrating his knowledge of the fraudulent scheme. When I practiced cross-examining Mr. Mandell, I did not think that the jury would find his responses to be credible. Mr. Mandell agreed with my assessment and chose not to testify.

9.      None of my defense tactics were motivated or influenced by my representation of Mr. Altman in his SEC disciplinary proceedings.

10.      I do not recall any conversation in which Mr. Altman sought my legal advice regarding the criminal investigation of Mr. Mandell, Thornwater Company, or Sky Capital LLC.

Dated: New York, New York
        July 18, 2016

_____
Jeffrey C. Hoffman, Esq.