USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/7/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ROSS MANDELL,

                *Petitioner*,

    -against-

UNITED STATES OF AMERICA,

                *Respondent*.

------------------------------------------------------------X

16 Civ. 1186 (PAC)

09 Cr. 662 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

*Pro se* petitioner Ross Mandell, mindful of the limitation on successive § 2255 petitions, moves pursuant to Fed. R. Civ. P. 60(b) to renew/repeat many of the same arguments he has already made and which the Court has considered and rejected in Mandel's initial § 2255 petition. (Dkt. 332, 337.[1])

Mandell argues that there is "newly" discovered evidence, consisting of a statement made by Mandell's trial counsel, Jeffrey Hoffman, in a separate and unrelated proceeding about his "standard operating procedure" to negotiate a plea, regardless of the client's expressed preference. Mandell raises this so-called "new" evidence with his previously rejected theory that Hoffman allowed his relationship with Steven Altman to interfere with his duty to represent Mandell. But for this interference, Mandell speculates, Hoffman could have sought a plea deal on Mandell's behalf. If only he had known, Mandell goes on, there would have been a different

---

[1] Docket citations, unless otherwise noted, are to *United States v. Mandell*, 09 Cr. 662 (PAC) (S.D.N.Y.).

outcome; he would have fired his counsel, retained a new lawyer, and sought a plea bargain with the government. This, of course, is a fairy tale.

The Court assumes familiarity with the prior and extensive proceedings in this matter. For convenience, the Court provides an abridged recounting. Mandell and several of his coworkers were indicted for a conspiracy to commit securities, mail, and wire fraud, as well as three substantive counts of securities, mail, and wire fraud. (Dkt. 2.) All the defendants pleaded guilty, save Mandell and his top lieutenant Adam Harrington. Mandell's motion to dismiss was denied. After a five week trial, the jury found Mandell guilty. Mandell was assigned new counsel, but his post-trial Fed. R. Crim P. 29 and 33 motions were denied. His conviction was affirmed, as was his sentence of 144 months. *United States v. Mandell*, 752 F.3d 544 (2d Cir. 2014). The Supreme Court denied certiorari. *Mandell v. United States*, 135 S. Ct. 1402 (2015). Mandell's petition pursuant to 28 U.S.C. § 2255 was also denied, and his appeal of this denial was dismissed by the Second Circuit.

Mandell's Rule 60(b) motion is an undisguised attempt to get another bite at the same apple. The problem is, the Court has already denied Mandell's sought relief and this so-called "newly" discovered evidence does not change its prior analysis. Hoffman's alleged conflict of interest was the subject of Mandell's § 2255 petition, which the Court rejected on May 23, 2017. (Dkt. 332.) The Court declined to issue a certificate of appealability because Mandell had not "made a substantial showing of the denial of a constitutional right." (*Id.* at 27.) Mandell moved for a certificate of appealability but the Second Circuit denied the motion and dismissed the appeal because Mandell had not "made a substantial showing of the denial of a constitutional right." (Dkt. 337.)

2

The Hoffman transcript does not provide any further support for Mandell's claim that Hoffman had an actual or potential conflict. Hoffman's requested relief, an evidentiary hearing and production of discovery related to Steven Altman, was denied by the Court on May 23, 2017, (*id.*) and January 18, 2018 (Dkt. 339), respectively. The transcript does not relate to Altman and provides no new grounds for an evidentiary hearing or discovery. Moreover, the transcript does not show any fraud and does not amount to exceptional circumstances warranting extraordinary judicial relief under Rule 60(b). Mandell's motion is DENIED.

## **BACKGROUND**

On February 11, 2016, Mandell petitioned pursuant to 28 U.S.C. § 2255 for reversal of his conviction and to vacate his sentence. He argued, *inter alia*, that his trial attorney, Jeffrey Hoffman, suffered from an actual or potential conflict of interest because he simultaneously represented and had a close relationship with unindicted co-conspirator Steven Altman. On May 23, 2017, the Court denied Mandell's petition because it did not plausibly establish either a lapse in Hoffman's representation, or that Hoffman's representation was objectively unreasonable and that Mandell was prejudiced as a result.

Mandell has latched on to a scrap of Hoffman testimony given on February 2, 2016 in a separate, unrelated case, *United States v. Sanders*, 12-cr-574, 16-cv-2808 (LAK) (S.D.N.Y. Jul. 31, 2012), in which Hoffman testified about his practice of pursuing plea deals for his clients. The relevant portion of the transcript reads:

> Q. Now, you testified on Mr. Jackson's examination that you spent a lot of time negotiating a plea agreement or plea offer from the government, right?
>
> A. Correct.
>
> Q. You also testified that Mr. Sanders expressed to you that he had no desire to plead guilty, correct?
>
> A. Correct.

3

> Q. So why were you spending the time negotiating a potential plea if Mr. Sanders was, in fact, not interested in pleading guilty?
>
> A. Because that's my standard operating procedure in all criminal cases. I go down both roads of trying to get the best plea offer and preparing for trial.
>
> Oftentimes, clients who express that they definitely want to go to trial and they have absolutely no intention of entering into any kind of a plea change that posture as cases go on, as more evidence comes in, and as we discuss the cases as we're proceeding.

(Dkt. 340 Ex. A at 57:8-25.) Mandell says that the transcript excerpt is "newly discovered" evidence that would have changed the outcome of his case, and that it constitutes a fraud on the court because it allegedly contradicts an affidavit Hoffman submitted in connection with Mandell's § 2255 petition. Mandell also renews his requests for an evidentiary hearing on Hoffman's alleged conflict and discovery of files relating to Steven Altman.

## DISCUSSION

### I. Legal Standards

#### A. Rule 60(b)

A court may set aside a prior final judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure if "newly discovered evidence" is uncovered "that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," or because of "fraud . . . misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(2)-(3). Relief under Rule 60(b), however, "is an extraordinary remedy that works against the interest of finality," *In re Optionable Sec. Litig.*, No. 07 cv 3753 (PAC), 2009 WL 1653552, at *2 (S.D.N.Y. June 15, 2009), and requires the moving party to demonstrate "exceptional circumstances," *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1994). A Rule 60(b) motion based on newly discovered evidence or fraud must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

4

When a movant seeks relief from denial of a § 2255 petition, "the Rule 60(b) motion must attack the integrity of the habeas proceeding and not the underlying criminal conviction." *Klein v. United States*, No. 09 CIV. 10048 PAC, 2013 WL 5966889, at *2 (S.D.N.Y. Nov. 8, 2013) (quoting *Harris v. United States*, 367 F.3d 74, 77 (2d Cir.2004)); *see also Hoffenberg v. United States*, No. 00 Civ. 1686, 2010 WL 1685558, at *4 (S.D.N.Y. Apr. 26, 2010) ("Rule 60(b) is not a vehicle to relitigate issues already raised during a prior Section 2255 proceeding.").

## II. Analysis

### B. Timeliness

The Government asserts that Mandell's motion is untimely, as it was filed on June 4, 2018—more than one year from this Court's Opinion and Order denying Mandell's § 2255 petition on May 23, 2017. As Mandell notes, however, the Clerk of Court did not file the judgment on the petition on the civil docket until June 14, 2017. (16-cv-1186-PAC, Dkt. 20.) If called upon to decide which date controls, the Court would hold that it is the date of the Court's order, not the date the Clerk's office enters judgment, but for the purposes of the present motion the Court assumes *arguendo* that Mandell's motion was timely filed.[2]

---

[2] In the context of when to begin the clock for timely filing of an *appeal* of a denial of a § 2255 motion, the Second Circuit has stated that Fed. R. Civ. P. 58 does not require a separate judgment to be entered. *Williams v. United States*, 984 F.2d 28, 30 (2d Cir. 1993). Rather, the Court has held that the time for an appeal runs from the entry of a court order denying the § 2255 motion, rather from the time the Clerk of Court entered the judgment. *Id.* Other circuits disagree. *See, e.g.*, *United States v. Johnson*, 254 F.3d 279, 287 (D.C. Cir. 2001) (time for appeal had not begun to run where district court issued a Memorandum and Order denying § 2255 petition but there was no separate judgment); *Local Union No. 1992 of Int'l Bhd. of Elec. Workers v. Okonite Co.*, 358 F.3d 278, 285–86 (3d Cir. 2004) (separate document titled "order" could comply with separate document requirement of Rule 58); *Mirpuri v. ACT Mfg., Inc.*, 212 F.3d 624, 629 (1st Cir. 2000) ("In our view, a final judgment occurs where, as here, an action is dismissed, leave to amend is explicitly denied, and the order is embodied in a separate document."). Nevertheless, the Court need not determine from which date the one-year clock starts for purposes of filing a Rule 60(b) motion, as Mandell's petition lacks merit.

5

## C. Newly Discovered Evidence

A party seeking relief under Rule 60(b)(2) must satisfy a demanding standard: "(1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (internal citation omitted). Mandell cannot meet this standard as the evidence is irrelevant and not of such importance that it probably would have changed the outcome of Mandell's case.

The evidence that Mandell asserts is "newly discovered" is the transcript from an entirely unrelated 2016 proceeding in which his prior counsel, Jeffrey Hoffman, stated that his "standard operating procedure in all criminal cases" is to negotiate plea offers with the government, regardless of whether his clients had expressed interest in a plea deal. (Dkt. 340 Ex. A.) Mandell draws the dubious inference that the transcript constitutes proof that Hoffman had a conflict of interest, because Hoffman did not procure a plea deal for Mandell. According to Mandell, this deviation from "standard operating procedure" can only be explained by Hoffman "purposely avoid[ing] providing the zealous and unconflicted representation he was obligated to provide. . . ." (Dkt. 340 at 6.) Mandell claims that "[t]he outcome of the proceeding would have been entirely different" had this evidence been discovered sooner, as he would have "immediately fired Hoffman and sought other counsel, delaying the trial . . . and had a chance to meet with the Government, to proffer, [and] to come to a plea agreement." (Dkt. 348 at 6.)

As the Court has previously indicated, it is doubtful that there was any conflict for Hoffman to represent both Mandell in his criminal proceeding and Altman in an unrelated SEC proceeding. (*See* Dkt. 332 at 15.) Even if there had been an actual or potential conflict of

6

interest, Mandell would not be entitled to relief as Hoffman's decision whether or not to pursue a plea deal for Mandell appears to have had nothing to do with Hoffman's representation of Altman. Mandell provides no evidence to the contrary but instead makes far-fetched and unsupported allegations, such as that "Hoffman horse-traded for Altman, while he was representing Mandell." (Dkt. 348 at 7.) In reality, Mandell cannot establish that there was a "lapse in representation" or prejudice from the alleged conflict.

Moreover, the Hoffman transcript does not show that Mandell could have reached a plea deal with the Government absent Hoffman's alleged conflict. Numerous statements by Mandell and Hoffman during Mandell's criminal proceedings show that Mandell maintained his innocence and would not have pleaded guilty. (*See* Dkt. 332 at 21.[3]) Likewise, Mandell constantly proclaimed his innocence on a reality television show he created on the internet. The Government's proof at trial was overwhelming that Mandell was the leader of a long time massive stock swindle. Mandell also cannot establish that he could have cooperated with the Government or convinced the Government not to prosecute or to give him a favorable deal. (*See id.* at 22-23.) The transcript is irrelevant and inconsequential, and thus does not constitute newly discovered evidence.

### D.  Fraud

A court may set aside a judgment for fraud or fraud on the court under Fed R. Civ. P. 60(b)(3); *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004). "To prevail on a Rule 60(b)(3) motion, a movant must show that the conduct complained

---

[3]  In an affidavit, Mandell stated: "I have no doubt the jury would have acquitted me had I been given the right to confront my accusers in court." At sentencing, Mandell stated that "the people that cooperated here, they perjured themselves in front of you. They lied," and made additional statements that witnesses "lied and lied" at trial.

of prevented the moving party from fully and fairly presenting his case. These same principles apply when a movant seeks to set aside a judgment on the basis of fraud on the court." *Id.* (internal citations and quotation marks omitted).

Mandell's evidence of fraud on the court is the same transcript in which Hoffman stated that his "standard operating procedure in all criminal cases" is to negotiate plea offers from the government, regardless of whether his clients had expressed interest in a plea deal. (Dkt. 340 Ex. A.) Mandell contrasts the transcript with an affidavit submitted by Hoffman on July 25, 2016 as part of Mandell's § 2255 motion, in which Hoffman states: "None of my defense tactics were motivated or influenced by my representation of Mr. Altman in his SEC disciplinary proceedings." (Dkt. 340 Ex. B ¶ 9.)

Mandell claims that these statements show a fraud on the court because they are purportedly in conflict and show that Hoffman failed to follow his standard operating procedure because of his representation of Altman. But the transcript and the affidavit are reconcilable—in both, Hoffman states that his usual or standard practice is to discuss a guilty plea with his clients, and in the affidavit, Hoffman states that he did not recall Mr. Mandell expressing interest in pleading guilty. And that is certainly consistent with Mandell's repeated announcements on his reality show that he was innocent and wanted his day in court. Even if Hoffman's statements were in conflict (they are not), they would not constitute fraud upon the court. *See Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988) ("After-discovered evidence of alleged perjury by a witness is simply not sufficient for a finding of 'fraud upon the court.'"); *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir. 1972) ("Insofar as appellant merely alleges that he now has new evidence which contradicts the testimony of [certain witnesses], this is insufficient for a finding of fraud upon the court.")

"Rule 60(b) is not a do-over when more facts emerge." *In re Optionable Sec. Litig.*, 2009 WL 1653552, at *4. It is an extraordinary remedy that works against the interest of finality, to be reserved for extraordinary circumstances. *Id.* The Hoffman transcript provides no evidence of a conflict or a fraud on the court. It would not have changed the outcome of Mandell's case, and it did not prevent Mandell from fully and fairly presenting his case. *State St. Bank & Tr. Co.*, 374 F.3d at 176. The new facts are irrelevant, inconsequential, and do not justify granting the extraordinary remedy for which Rule 60 provides. The Court will not re-open this case.

As Mandell's § 2255 petition has already been denied and will not be re-opened, Mandell is not entitled to an evidentiary hearing or discovery. *See Martin v. United States*, 834 F. Supp. 2d 115, 139 (E.D.N.Y. 2011).

## CONCLUSION

For the reasons stated above, Mandell's motion pursuant to Fed. R. Civ. P. 60(b) is denied. The Clerk of Court is directed to terminate the motion at Docket # 340 and 343.

Dated: New York, New York
February 7, 2019

SO ORDERED

*/s/ Paul A. Crotty*
PAUL A. CROTTY
United States District Judge

Copy mailed to:
Ross H. Mandell
62590-054
Federal Corrections Institution Miami
15801 SW 137th Ave.
Miami, FL 33177